## WHITE v. RUKES.

No. 6479. Opinion Filed February 15, 1916.

Rehearing Denied March 21, 1916.

(155 Pac. 1184.)·

1. **HIGHWAYS—Operation of Automobile—Duty of Driver.** One who operates an automobile on a highway owes to other travelers the duty of controlling and driving it carefully so as to avoid causing needless injury, and in the performance of that duty is bound to take all the precautions which reasonable care requires under all the circumstances.

2. **SAME—Care Required—Matters Determinative.** The owners of automobiles have the same rights on highways as those riding horseback or traveling by other vehicles, but must use this means of locomotion with due regard for the rights of others. And the speed of the machine. its size, appearance. its manner of movement, the danger of operating it upon the highway, and the like, will be taken into consideration in· determining the degree of care required of the operator of the automobile.

3. **SAME—Negligence—Liability.** Where the driver of an automobile needlessly or recklessly runs his machine into the horse of a rider, upon a public highway, and thereby injures the horse, he will be held liable for the injury.

(Syllabus· by Brett, C.)

*Error from District Court, Canadian County;*
*John J. Carney, Judge.*

Action by Frances M. Rukes against O. C. White. Judgment for plaintiff, and defendant brings error. Affirmed.

*Fogg & Bennett,* for plaintiff in error.

*James I. Phelps,* for defendant in error.

Opinion by BRETT, C. This action was commenced by the defendant in error, Frances M. Rukes, against the plaintiff in error, O. C. White, in the district court of Canadian county, to recover damages alleged to be due the

plaintiff by reason of the defendant negligently running his automobile over a horse belonging to plaintiff. The facts, briefly stated, are as follows: Two minor sons of the plaintiff were riding horseback along a public highway, they going toward the north, when they saw the defendant approaching in his automobile coming toward the south. The road at this point had been graded down about two feet. This graded part of the section line was 40 feet wide, and left an embankment about two feet high and ten feet wide on either side of the graded portion of the road. One of the boys, before reaching the automobile, rode his horse up on this embankment on the west side of the road; the other boy rode his horse to the edge of the embankment on the east side of the road. The defendant's car struck the horse that was standing at the edge of the embankment on the east side of the road, knocking him under the car, throwing the boy from the horse and to the opposite side of the car. One of the horse's hind legs was so badly crippled that the evidence shows he is worthless. To recover damages for the horse, and for loss of his services, etc., this action was brought, which resulted in judgment in favor of the plaintiff for $75, and to reverse this judgment the defendant has perfected an appeal to this court.

The defendant (plaintiff in error) complains, first, because the court did not sustain a demurrer to the evidence, and did not direct a verdict for the defendant, insisting most earnestly that:

"There is not a scintilla of evidence tending to show any negligence on the part of the defendant * * * or the slightest connection between the negligence averred and the injury to the horse."

We have carefully read the entire record, and we cannot agree with this contention. The evidence of the defendant is that he was driving "in the middle of the dirt track that is between the two banks," and when he got within from 12 to 20 feet of the horse he "squatted and leaped to the front of the car." He is corroborated in this statement by the party riding in the car with him. The boy who was riding the horse that was injured testified that the horse was gentle, and was not afraid of a car, that he did not jump when the car approached, and in response to questions answered as follows:

"Q. Now, how close were you to the fence on the east side? A. I don't know. I was right next to the bank. It is not very far from the fence. Q. And White was in the main traveled tracks that the wheels run in coming toward you? A. Yes. Q. You say he just came down and run over you? A. No, he didn't; he looked to me like he pulled out. Q. Pulled out to run over you? A. I don't know whether he pulled out to run over me, but it looked like it. Q. What did your horse do? A. Nothing."

The witness Essar testified that he reached the scene of the accident ten or 15 minutes after it happened, that he saw the mark on the road where the automobile struck the horse, and that the car and the horse were on the east side of the road when the car struck the horse. There was also evidence that for some distance north of the point where the accident occurred there were automobile tracks "going from one side of the road to the other." There were also circumstances testified to that indicated these zigzag tracks running from one side of the road to the other were made by the car of the defendant. There was also some slight evidence to the effect that the defendant had said his steering wheel was out of repair,

and he could not control the car. The defendant, though, on the stand did not contradict this evidence, or deny that his car made the zigzag tracks.

This evidence, we think, taken in connection with the other facts and circumstances testified to, was sufficient to take the case to the jury, and to sustain the verdict and judgment in favor of the plaintiff. The traveled road at this point was 40 feet wide; the horse on the west side was up on the embankment, entirely out of the traveled road, leaving about 40 feet in which the defendant could drive his car without striking the horse he injured. And the testimony of the boy riding this horse that it looked like he pulled out of the road to run over him, if believed by the jury, was sufficient to justify the verdict. And it was not for the court to say whether this was true or false, but purely a question for the jury. We cannot believe, nor do we think the jury believed, the defendant intentionally pulled out of the road to inflict an injury upon this boy or the horse. But if he did run diagonally across the road, as the boy testified, striking the horse, whether this was due to carelessness or to the defective condition of the machine would be immaterial, since it is the generally accepted rule that:

"One who operates an automobile on a highway owes to other travelers the duty of controlling and driving it carefully, so as to avoid causing needless injury, and in the performance of that duty is bound to take all the precautions which reasonable care requires under all the circumstances." (Indian Springs Co. v. Brown, 165 Ind. 465, 74 N. E. 615, 1 L. R. A. [N. S.] 238, 6 Ann. Cas. 656.)

In McIntyre v. Orner, 166 Ind. 57, 76 N. E. 750, 4 L. R. A. (N. S.) 1130, 117 Am. St. Rep. 359, 8 Ann. Cas.

1087, the same rule is announced in the following language:

"While the owners of automobiles have, subject to statutory restrictions, equal rights with the owners of other vehicles to use the highways, this equality of right imposes a reciprocal duty of managing the machine with care and caution, to avoid causing injury to others having equal rights."

Under the testimony of this boy, taken in connection with the other evidence in the case, the defendant did not bring himself within the requirements of this rule; for it requires the driver of an automobile upon a public highway to control and drive the car so as to avoid needless injury to others. It is true there was a sharp conflict in the evidence, and if the jury had accepted the defendant's theory, they doubtless would have returned a verdict in his favor, and this court would have been bound by their verdict. But they accepted the plaintiff's theory, and the evidence is sufficient to sustain their verdict and the judgment based thereon.

2. The defendant complains of certain instructions given by the court, and because the court refused to give two requested instructions, one of the requested instructions being for a directed verdict, which has already been disposed of; and we have examined the other, and cannot say it was prejudicial error under the record in this case for the court to refuse to give it. The instructions given are complained of, first, because the court instructed the jury:

"* * * That under the law more care and caution should be exercised by a person driving an automobile in passing upon the road than would be required of a person who is riding a horse or driving an ordinary vehicle."

But this principle, we think, is supported by both common sense and the authorities on this question. In *House v. Cramer*, 134 Iowa, 374, 112 N. W. 3, 10 L. R. A. (N. S.) 655, 13 Ann. Cas. 461, the syllabus reads:

"The owners of automobiles have the same rights in highways as the drivers of horses and those traveling by other vehicles, but they must use that means of locomotion with due regard for the rights of others, and the speed of the machine, its size, appearance, manner of movement, noise, and the like may be taken into consideration in determining the degree of care required of the operator of the automobile."

This authority is cited by defendant, but undoubtedly supports the doctrine that the driver of an automobile should exercise more care and caution upon the public highway than would be required of persons who were riding horseback or driving an ordinary vehicle, and, we think, correctly states the law. The other objection urged against the instructions given by the court is that the court charged the jury that, if they found from the evidence that the defendant—

"* * * ran his automobile in close proximity to the point where the horse of the plaintiff was standing while there was room for him to pass further away from the said horse, and thereby avoid injury to the said horse, or avoid frightening the said horse, then the defendant herein was not complying with the law in so doing."

The defendant says:

"This instruction, in substance, directed the jury absolutely to return a verdict for the plaintiff. The road was smooth, and there is no doubt but what there was room for the defendant to have passed further away from the horse. Instruction is not qualified or explained, nor is the

jury required to take into consideration the surrounding circumstances. Under this instruction and the evidence, the jury could do nothing but return a verdict for the plaintiff. The jury was not given an opportunity to consider the fact that if the defendant went further away from the horse that was injured, he would have gotten that much closer to the horse on the west bank, and that horse might have been injured. The defendant was halfway between the two horses, and had no alternative but to remain in the center of the road.

But it certainly cannot be seriously argued that there was danger of this automobile injuring the horse upon the bank, which was two feet higher than the roadbed. And if the jury believed the defendant was in the center of the road at the time the accident occurred, this instruction would not be prejudicial to him, for it only makes him liable in the event the jury found he needlessly ran the automobile "in close proximity to the point where the horse of plaintiff was standing." If he did not do this, under this instruction and the law, he was not liable; if he did, the court properly told the jury he was liable.

Finding no prejudicial error in the record, we recommend that the judgment be affirmed.

By the Court: It is so ordered.