CARPENTER v. SNIPES et al.

No. 33512.    Oct. 31, 1950.

*223 P. 2d 761.*

Russell Morgan and Lee Gill, both of Oklahoma City, for plaintiff in error.

Richardson, Shartel, Cochran & Pruet, F. M. Dudley, and Gilliland, Ogden, Withington, Shirk & Vaught, all of Oklahoma City, for defendants in error.

O'NEAL, J. This is an appeal from a judgment for defendants in an action to recover damages for personal injuries.

On October 8, 1946, there was a collision of a truck-trailer and an automobile at the intersection of Northeast 36th street and U. S. Highway 66, also U. S. Highway 77, and also referred to as Lincoln Boulevard. Said intersection was just outside the limits of Oklahoma City, the south line of Northeast 36th street at that point being the north limits of Oklahoma City.

Plaintiff, Mary Eva Carpenter, was a guest passenger in an automobile driven by Rebecca Jane Stowers, and owned by W. Lloyd Stowers. Defendant Evi B. Farley Snipes was driving a truck trailer as an employee of Robberson Steel Company.

The truck-trailer was proceeding on Northeast 36th street going west. The automobile was going south on U. S. Highway 66. At that time there were stop signs on Northeast 36th street about 125 feet east of the center line of the intersection. There was no stop sign on U. S. Highway 66. Plaintiff, Mary Eva Carpenter, was injured in the collision, and thereafter commenced this action against Snipes, Robberson Steel Company, a corporation, Rebecca Jane Stowers, and W. Lloyd Stowers to recover damages for her personal injuries. In her amended petition plaintiff alleged negligence on the part of defendants Snipes and Robberson Steel Company, in that Snipes, the driver of said truck-trailer:

". . . carelessly, recklessly, and in gross disregard of the rights of plaintiff, failed either to slow down substantially or to stop between said stop sign and the place of said collision at some point where he could reasonably see southbound traffic, such as said automobile, and thereby avoid any collision, when, he then knew or should have known, said stop sign was there as a warning to west-bound traffic upon said Thirty-sixth street to stop there, and traffic upon said Lincoln Highway would reasonably expect such west-bound traffic to recognize and obey said stop sign or at the least to slow down substantially at said stop sign or between it and said intersection, and the traffic there upon said Lincoln High-

way was likely to be heavy, and said stop sign was there to indicate this fact to drivers of such west-bound traffic and the view there to the northward of drivers of such west-bound traffic was obstructed as aforesaid, and said tractor-trailer was a long, heavy and unwieldly vehicle, and, therefore, the more likely to obstruct said intersection dangerously by totally or almost totally blocking the way of traffic there upon said Lincoln Highway."

". . . That he carelessly, recklessly, and in gross disregard of the rights of plaintiff, and under the conditions herein set out, drove said tractor-trailer to said intersection and into said intersection at a reckless and excessive rate of speed, to-wit, a speed of thirty-five miles or more per hour."

". . . That he, carelessly and recklessly, and with gross disregard of the rights of plaintiff, drove said tractor-trailer, as aforesaid and under the conditions aforesaid, up and across said intersection, his view to the northward was obstructed, as aforesaid, without having said tractor-trailer under control."

". . . That he carelessly, recklessly, and with gross disregard of the rights of plaintiff, failed to keep a proper look-out as he approached and drove into said intersection, when if he had kept a proper look-out there he would have seen said automobile in time to have avoided said collision and would have been able to have avoided same."

". . . That he carelessly, recklessly, and with gross disregard to the rights of plaintiff, drove said tractor-trailer out into said intersection and on out into the path of said automobile, so that, as a result thereof, said automobile could not avoid colliding with said tractor-trailer, and, thereupon, said Evi Snipes failed to swing or turn said tractor-trailer to the southward and clear the front thereof from the path of said automobile, which, in the exercise of ordinary and reasonable care he could and should have done, and when thereby he could have avoided said collision."

". . . That, wrongfully, wilfully, and unlawfully, and with gross disregard of the rights of plaintiff, he violated the rule of the road prescribed by the statutes of the State of Oklahoma, 69 Okla. Stat. Anno. 583 under which said automobile, which was approaching from his right, was entitled to the right-of-way, and did not yield the right-of-way and keep said tractor-trailer out of said intersection or slow same down and permit said automobile to pass ahead and across said intersection."

". . . That he, carelessly and recklessly, and with gross disregard of the rights of plaintiff, drove said tractor-trailer, as aforesaid, and under the conditions aforesaid, up to and across said intersection, where his view to the northward was obstructed, as aforesaid, without sounding his horn or giving any other signal of his approach."

She also alleged negligence on the part of Rebecca Jane Stowers, but since plaintiff dismissed her action without prejudice as against Rebecca Jane Stowers and W. Lloyd Stowers, the allegations as to their negligence need not be considered.

Defendants Snipes and Robberson Steel Company filed their answer in which they admitted that Robberson Steel Company is a corporation organized and existing under the laws of the State of Delaware, and was duly authorized to transact business in the State of Oklahoma, and that defendant Snipes was at the time of said accident the employee of Robberson Steel Company and in the course of his employment. They pleaded contributory negligence on the part of plaintiff, and further alleged that said defendants were without fault in the premises, and that the accident and injury were due solely, directly and proximately to the negligence of Rebecca Jane Stowers.

The issues were tried to a jury and at the close of plaintiff's evidence, defendants, Snipes and Robberson Steel Company demurred to plaintiff's evidence. Said demurrers were sustained by the trial court. Whereupon plaintiff dismissed her action without prejudice as to defendants Rebecca Jane Stowers and W. Lloyd Stowers. The court dismissed the action as to defendants

Snipes and Robberson Steel Company, and plaintiff, after unsuccessful motion for new trial, appeals.

There are eleven assignments of alleged error, but those presented and relied upon all go the general proposition that the court erred in sustaining the separate demurrers of defendants to plaintiff's evidence and in entering judgment for said defendants. It is the contention of plaintiff that the evidence, together with all reasonable inferences that might have been drawn therefrom, sufficiently show actionable negligence to justify submitting the issues to the jury. Under four specific propositions plaintiff asserts that there was evidence of actionable negligence in that: (1) There is evidence that defendant was guilty of negligence in failing to yield the right of way to the vehicle in which plaintiff was a passenger; (2) there was evidence of actionable negligence in that defendant failed to observe a stop sign; (3) that there was evidence of actionable negligence in failure to keep a proper lookout; and (4) that there was evidence of actionable negligence in driving the truck-trailer at an excessive rate of speed under existing conditions and circumstances.

The record shows that the paved portion of 36th street and Lincoln Boulevard are each 24 feet in width, with rounded corners at the intersection to facilitate turns into and out of the same at the intersection. The evidence shows that plaintiff, on October 8, 1946, was a guest passenger in an automobile being driven by defendant Rebecca Jane Stowers, when the automobile in which she was riding collided with the truck-trailer, or tractor-trailer, as it is sometimes referred to, at the above intersection; that before the collision said automobile was traveling south on U. S. Highway 66 and the truck-trailer was being driven by Snipes going west on 36th street. The collision occurred in daylight about 3:30 o'clock p. m.

William B. Blood, a highway patrolman, or trooper, with the Department of Public Safety, was called as a witness for plaintiff, and testified that he was called to come to the scene of the collision; that he received the call about 3:40 o'clock p. m., and arrived at the scene of the collision at approximately 3:50 o'clock p.m., and that at that time the two vehicles were in the same position at which they had come to a stop after the collision; that the automobile was standing with the front nearly to the north about one foot on the paved part of Lincoln Boulevard and about two feet of the rear part of the automobile on the paved part of 36th street; that the truck-trailer was standing with its truck part entirely off to the south of 36th street with the trailer extending back on to Lincoln Boulevard about four feet. He testified further that, from the skid marks on the pavement made by the two vehicles, it was apparent that the point of impact, that is, the place where the two vehicles came together, was about five feet west and about six feet north of the center of the intersection; that the skid marks left on the pavement by the automobile showed that it had skidded about 27 feet before reaching the point of impact; that the skid marks left by the truck part of the truck-trailer extended about ten feet south and west from the point of impact. There were no skid marks made by the truck east of, or before, the point of impact. The rear of the truck part of the truck-trailer had traveled about 42 feet from the point of collision; that there was a large dent with a round dent in the right rear part of the cab of the truck and scratch marks on the right front part of the trailer. Said witness testified that he talked to the driver of the two vehicles with reference to how fast they were going at the time, or just before the collision; that Snipes told him that he was driving 20 to 25 miles per hour, and that Mrs. Stowers told him that she was driving

between 35 and 40 miles per hour, but after refreshing his mind by reference to a copy of his report of the accident made at the time, he stated that it was his belief that she stated she was traveling at about 25 to 30 miles per hour; he also testified that he spoke, or addressed, himself to the plaintiff but that she did not answer him. He said: "I think she was more or less unconscious then. She didn't answer." He testified that at that time there were no stop signs on Lincoln Boulevard; that there were two stop signs on 36th street. One was approximately 125 feet east of the center of the intersection on the north side of 36th street. The other stop sign was approximately the same distance west of the intersection on the south side of 36th street.

Mrs. E. L. Sherry was called as a witness for plaintiff. She testified that she was one of the four ladies who were riding in the automobile being driven by Rebecca Jane Stowers; that she was sitting in the front seat with the driver; that she observed the truck-trailer coming from the east as it was approaching the intersection; that at that time the automobile in which she was riding was on the edge of 36th Street. She does not drive an automobile and was unable to testify as to the rate of speed of either vehicle.

Mrs. Fred Kacker was called as a witness for plaintiff. She testified that she was one of the four ladies riding in the Stowers automobile, a 1941 Dodge Sedan. She testified that she was sitting in the rear seat with plaintiff, Mary Eva Carpenter, and that she saw the truck-trailer approaching the intersection when it was about even with the west post of the filling station located on the north side of 36th street and the east side of Lincoln Boulevard; that said post was about 30 feet east of the east line of Lincoln Boulevard. She testified that at the time she saw the truck-trailer the automobile in which she was riding was about 35 feet north of the north edge of 36th street; that the truck-trailer was moving at the time she first saw it and that it did not stop, nor change its rate of speed until the collision occurred. She does not drive an automobile and was not qualified to testify as to the rate of speed of the respective vehicles.

Mrs. Rebecca Jane Stowers, one of the then defendants, and the driver of the automobile involved, was called as a witness on behalf of plaintiff, and testified, in substance, that she was driving south on Lincoln Boulevard and was about even with the north part of the filling station (located on the northeast corner of Lincoln and 36th street) when she looked and saw the truck-trailer; that she was then about 85 feet from the north edge of 36th street; the truck-trailer was then about 65 or 70 feet east of the east line of Lincoln Boulevard; that she was driving her automobile at about 30 or 35 miles per hour; that the truck-trailer was traveling at about the same rate of speed, or a few miles less, per hour; that the truck-trailer did not stop or slow down from when she first saw it until the collision occurred; that she did not know whether the truck-trailer stopped at the stop sign 110 or 125 feet east of the intersection, but she testified positively that the truck-trailer did not stop, or lessen its rate of speed within the 65 or 75 feet east of the east line of the intersection. She stated that she was testifying from memory as to where she was and where the truck-trailer was when she first saw it. As to the distances, she testified that she had gone out a few days before the trial and measured them. She testified that within the 65 feet east of the intersection the driver of the truck-trailer did not sound his horn or give other warning of his approach.

She admitted that she testified at a former hearing in the matter and that she then stated that she was 30 or 35 feet from the intersection when she first saw the truck-trailer. She testified at the trial that that was her judgment at the time she had testified in the former hearing, but after that she had measured the distances and it was

Page number header

about 85 feet instead of 30 or 35 feet. She also admitted that she had testified at the former hearing that when she first saw the truck-trailer it was entering the intersection. At the trial she testified that what she meant by the former statement was that the truck-trailer was "approaching the intersection" when she first saw it, and that in fact it was not entering the intersection when she first saw it.

There was evidence from the skid marks, etc., tending to show that from the point of impact the truck-trailer entered the intersection before the automobile. The defendants contended that that is shown from the physical facts, and that under the rule stated in Stroud v. Tompkins, 193 Okla. 483, 145 P. 2d 396, the court, in construing 69 O. S. 1941 §583, held the truck-trailer had the right of way over the automobile whether approaching from the right or left. It appears, however, that 69 O. S. 1941 §583 was repealed in 1949 by S. L. 1949, page 512, section 10. In Guegel v. Bailey, 199 Okla. 441, 186 P. 2d 827, it is held:

"Where one of two intersecting highways is a boulevard protected from traffic on the other by stop signs, the rule that first automobile to enter intersection has right of way does not ordinarily apply, and motorist on boulevard has right to assume that driver on intersecting highway will obey stop sign and yield right of way."

The trial court, in the order sustaining the demurrers of defendants to plaintiff's evidence, did not state or give the reasons therefor, but the next morning, after plaintiff had dismissed her action as against defendants Rebecca Jane Stowers and W. Lloyd Stowers, the court took occasion to explain to the jury the reason why the court had sustained the demurrers to plaintiff's evidence and therein stated:

"The Court: I will tell you this, because you are entitled to know it. Of course, the jury is entitled to know everything that goes on. Certain responsibilities are on the Judge in these

cases, and certain responsibilities are on the jury.

"Yesterday afternoon about 4:00 o'clock when the plaintiff rested, each of the defendants demurred to the evidence. That is to say, the attorneys say if we admit everything the evidence shows against each one of these defendants, they have not shown any breach of the obligation imposed by law, and therefore should not be compelled to proceed any further with this case.

"After listening to the argument, I came to the conclusion that so far as the truck driver and the defendant Robberson Steel Company and the driver of that truck are concerned, they do not show any breach of duty at all in the evidence. The man, so far as this evidence shows, was where he had a right to be; he did not violate any rules of the road, and he did not violate any rule of law at all; that the car driven by the lady unfortunately was driven down and ran into the side of his truck as he had crossed that corner, which he had a perfect right to do.

"When that situation presents itself, it is the duty of the Court to say whether or not a cause of action has been proven or not, and I came to the conclusion it had not shown any legal grounds for relief against the truck driver, and I sustained those demurrers."

Under her general proposition plaintiff calls attention to the well established and oftrepeated rule that:

". . . A demurrer to the evidence admits every fact which the evidence, in the slightest degree, tends to prove, and all inferences and conclusions which can be reasonably and logically drawn therefrom; and if there is a conflict in the evidence, that which is unfavorable to the party against whom the demurrer is directed is to be considered withdrawn."

In connection therewith plaintiff cites Carter v. Pinkerton, 194 Okla. 34, 146 P. 2d 842. Our attention is also called to the rule stated in White v. Rukes, 56 Okla. 476, 155 P. 1184, that:

"The owners of automobiles have the same rights on highways as those riding horseback or traveling by other vehicles, but must use this means of locomotion with due regard for the rights of others. And the speed of the machine, its size, appearance, its manner of movement, the danger of operating it upon the highway, and the like, will be taken into consideration in determining the degree of care required of the operator of the automobile."

Keeping in mind the foregoing rule, consideration must be given to the speed, size, appearance, manner of movement, and the danger in operating the truck-trailer here involved. It is apparent that the truck-trailer was a large heavy machine, and much more difficult to control than an automobile. In the instant case, there was evidence, together with the inferences and conclusions which could reasonably be drawn therefrom, under which the jury could have found that Snipes, the driver of the truck-trailer, was guilty of negligence in that he had failed to obey the warning sign and failed to stop the truck-trailer before entering the intersection. It is true that there is no evidence that he did not stop at the stop sign some 125 feet east of the intersection, but there is evidence that he did not stop his truck-trailer at any distance less than 65 feet east of the east line of the intersection, and that he did not, within that distance, slow down or slacken his speed. The evidence is such that the jury might have found that Snipes did not, as a matter of fact, stop even at the stop sign 125 feet east from the intersection. It was shown that the truck-trailer was driven at the rate of about 28 or 30 miles per hour when it reached the point 65 feet east of the intersection. It had then traveled only about 60 feet past the stop sign. Considering the size, apparent weight of the truck-trailer, and the manner of its movement, the jury might well have found that it could not, or most probably it did not, stop at the stop sign, and then attain a speed of 28 to 30 miles per hour within 60 feet.

Any reasonably prudent, or reasonably intelligent person would readily see and understand that it was not intended that motor vehicles should stop at the exact spot or place where the sign was erected, but it was intended as a warning to stop at the intersection. Furthermore, the evidence was such that the jury might have found that Snipes was negligent in approaching and entering the intersection at an excessive rate of speed, considering the conditions and circumstances. In Townsend v. Cotten, 180 Okla. 128, 68 P. 2d 790, it was held:

"Section 14, chapter 113, S. L. 1933, amending section 10323, O.S. 1931, fixes no definite speed limit for vehicles operated upon the highways, except for such vehicles as are used for the transportation of passengers for hire, but imposes upon drivers using the highways the duty of driving at a careful and prudent rate of speed not greater nor less than is reasonable and proper, having due regard for the traffic, surface, and width of the highway and of any other conditions then existing."

In Knox v. Loose-Wiles Biscuit Co. of Oklahoma, 194 Okla. 611, 154 P. 2d 59, the following rule is stated:

"Whether automobile was being driven at excessive speed in violation of statute at time of collision with another automobile depends on conditions specified or contemplated in statute and is fact question for jury."

For the above reasons we hold that the trial court erred in sustaining the demurrers to plaintiff's evidence.

There is some contention that the plaintiff failed to save exceptions to the order or ruling of the court sustaining the demurrers to plaintiff's evidence, and, therefore, the alleged error is not properly before this court. The record shows in at least two or more places that the court gave or allowed

plaintiff exceptions to the order sustaining the demurrers. The trial court at one place stated from the bench:

"I sustained those demurrers and gave the plaintiff an exception to each one of them."

The journal entry of judgment in one paragraph states that the court:

" . . . finds that the separate demurrers of the defendants, Evi B. Farley Snipes and Robberson Steel Company, a corporation, should be sustained—to which finding the plaintiff excepted, and her exceptions were allowed by the Court."

In another paragraph the journal entry says:

"It is, therefore, ordered, adjudged, and decreed that the separate demurrers of defendants, Evi B. Farley Snipes and Robberson Steel Company, a corporation, be and they are hereby sustained, to all of which the plaintiff in open Court duly excepts, and her exceptions are by the Court allowed."

That is sufficient to show that plaintiff saved her exceptions, and that the same were allowed by the court. Harris v. Hart, 49 Okla. 143, 151 P. 1038.

The judgment is reversed and the cause is remanded, with directions to grant plaintiff a new trial.

DAVISON, C.J., and LUTTRELL, HALLEY, and JOHNSON, JJ., concur. ARNOLD, V.C.J., and CORN and GIBSON, JJ., dissent.