**TRANSPORT INDEMNITY COMPANY, Transcon Freight Lines, and William Eugene Hall, Plaintiffs in Error,**

v.

**Hazel PAGE, Administratrix of the Estate of Burl Page, deceased, Defendant in Error.**

**No. 39830.**

Supreme Court of Oklahoma.

Oct. 15, 1963.

As Amended on Denial of Rehearing Oct. 12, 1965.

Concurring Opinion Oct. 12, 1965.

981

Foliart, Shepherd & McPherren, Oklahoma City, for plaintiffs in error Transcon

Freight Lines and Transport Indemnity Co.

W. B. Edwards, Seminole, for plaintiff in error William Eugene Hall.

Horsley, Epton & Culp, Wewoka, and Dick Bell, Seminole, for defendant in error.

BERRY, Justice.

The parties appear here as they appeared in the trial court. The defendant Transcon Freight Lines will be referred to as Transcon, which reference will include the defendant Transport Indemnity Co., and defendant William Eugene Hall will be referred to as Hall.

This is an appeal from a judgment rendered upon a jury verdict in favor of plaintiff, administratrix of the estate of Burl Page, deceased. The action was brought for damages for wrongful death, conscious pain and suffering, and medical expenses alleged to have resulted from a collision between deceased's automobile and a truck-trailer transport operated by defendant William Eugene Hall.

Plaintiff's cause of action is predicated upon the alleged joint and concurrent negligence of defendant William Eugene Hall and J. C. Rooker, the driver of the Transcon transport truck.

A full understanding of the physical surroundings and circumstances connected with the accident is disclosed by the following statement. About 7:30 a. m. on the morning of November 20, 1961 deceased, Burl Page, was driving his automobile west on U. S. Highway 64 some two miles west of Webbers Falls enroute to work. Rooker, an admitted agent and employee of Transcon was traveling east in a white freight-liner with a van trailer which we shall, for convenience, refer to as truck #1. Following behind Rooker was a loaded Mack truck and open trailer referred to as truck #2, fifty feet long, seven and one half feet wide, weighing 56,000 pounds and driven by John Henry. Traveling behind the Henry truck was a Mack truck and trailer forty-eight feet long with a laden weight of 55,000 pounds driven by defendant Hall, here designated as truck #3. The weather was cloudy and cold but the highway was dry.

Just before the accident, Henry in truck #2 was maintaining a distance of two truck lengths or about one hundred feet behind the Transcon truck or truck #1; and defendant Hall in truck #3 was approximately the same distance behind the Henry truck. The trucks had been traveling about 45 miles per hour, although trucks #2 and #3 had been gaining on truck #1 shortly before the accident. Near the point of the accident, Highway 64 crosses Dirty Creek over a bridge approximately 18 feet wide and protected by a "narrow bridge" sign located about 300 to 400 ft. west. When within about 500 or 600 feet west of the bridge, Rooker, driver of truck #1, observed an automobile driven by Page approaching around a curve some 500 to 600 feet east of the bridge. Although the evidence is conflicting, the jury must have found truck #1 slowed as it approached the bridge, and when about 100 feet from the bridge, applied his brakes and brought the truck to a stop only a few feet from the bridge and blocked the east-bound traffic lane. The driver of truck #2, following behind truck #1, saw the brake lights flash and applied his brakes and was able to stop in the rear of the first truck. Upon observing truck #2's brake lights, defendant Hall, in truck #3, applied his brakes but was unable to stop; and to avoid striking truck #2 he turned his truck to the left and directly into the path of decedent's oncoming west-bound automobile. Page's car was struck "nearly head-on" and knocked into the guard rail on the north side of the highway. Truck #3 continued eastward along the wrong traffic lane and into Dirty Creek. As a result of this collision, Page suffered severe injuries which caused his death 7 days later.

The evidence was sharply conflicting in many material respects. The jury returned a verdict for plaintiff and against all of the defendants, same being trucks #1 and #3. After motions for new trial were

overruled by the trial court, each defendant appealed.

■ This appeal presents a matter of legal cognizance, and in such cases the verdict of the jury is deemed to include specific findings in favor of the prevailing party upon every issue of the facts, and this Court will not disturb such findings unless there is absence of evidence in the record reasonably tending to support same. In Syllabus 3 of East Basin Oil & Uranium Co. v. R. L. Pound, etc., Okl., 321 P.2d 694, we said:

"Where in an action of law there is conflict in the evidence, and verdict in favor of plaintiff is approved by the trial court, this court cannot weigh the evidence and reverse the judgment because the evidence on which the verdict was founded was contradicted by other evidence at the trial."

See also Burke v. Scott, Okl., 361 P.2d 272, and cases cited therein.

■ Thus, the evidence before us is to be viewed in the light most favorable to the plaintiff, and conflicting evidence favorable to defendants merits only incidental reference in considering the issues determinative of this appeal.

Defendant Hall, in truck #3, for reversal, urges two propositions, to-wit: First, that the evidence is insufficient to sustain the judgment in favor of the plaintiff; and Second, excessive damages which appear to have been given under the influence of passion and prejudice.

Plaintiff's petition charged defendant Hall with negligence in: (1) failing to drive to the right of center of the highway in violation of 47 O.S.1951 § 121.4(b) which requires that "each driver shall keep to the right of the center of the roadways." (2) violation of 47 O.S.1951 § 121.3(a) which provides: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than, nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other con-

ditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead; * * *."

Defendant Hall argues in support of his first contention that he was confronted with a sudden emergency which caused him to pull his vehicle to the left to avoid colliding with truck #2, in front and thereby collided with deceased's automobile. He argues that in the face of an emergency he acted as a reasonable and prudent man under the circumstances, and that not having time to react properly or think of the consequences, he cannot be charged with negligence.

■ The evidence relative to the circumstances existing just prior to and at the time of the collision does not sustain defendant's claim of a sudden emergency. Defendant knew the size and weight of his own vehicle and he knew that he was following behind two large trucks. The evidence is undisputed that trucks #2 and #3 were traveling in consort by previous plan. It is further clear they had been maintaining a speed in excess of the statutory limit for trucks of this weight. It is further undisputed that truck #3 was not maintaining the required distance of 300-feet separation between his vehicle and truck #2. It is conceded that just prior to the collision, truck #2, immediately ahead, obstructed truck #3's view so that he could only see the back of truck #2 and could not see the bridge or the decedent Page's approaching car. The evidence is that when truck #2 applied his brakes and activated his rear signal lamps, truck #3, by virtue of his own acts, i. e., following two closely, failing to maintain a proper lookout and failing to maintain a proper speed, each being a violation of a statute then in effect, had placed himself in a position where he could not stop within the assured clear distance ahead. The slowing of the trucks ahead furnished warning of changed or unusual traffic conditions on the highway ahead and the "narrow bridge"

sign ahead, which, under the evidence, truck #3 failed to observe, were sufficient to indicate to a prudent driver of a large vehicle that care and caution were required. Under the evidence as adduced, measured by Title 47 O.S.Supp. 1959 §§ 121.3(f), 121.4(c) and 121.3(a), defendant Hall's (truck #3) contentions are without merit and the verdict is amply supported by the evidence as to him.

Defendant Hall, in his second contention, avers that the size of the verdict is so excessive under the testimony that it is obvious that the jury was actuated by passion and prejudice as against this defendant. The cases cited by defendant do not, to our minds, support his view. The uncontroverted evidence showed that deceased was 40 years old, earned $6,000.00 per year, and as a Civil Service employee could reasonably expect to earn in excess of $161,000.00 during his remaining life without consideration of normal periodic increments. It is settled that whether a verdict for damages for personal injury is excessive depends on the particular case.

■ There is neither evidence nor argument that anything which occurred during the trial of this case establishes bias, passion or prejudice of the jury which is reflected in the verdict rendered. The trial court did not consider the verdict excessive but approved it. The amount of the verdict was well within the evidence. In such a case it is not within the province of this Court to substitute its own judgment for that of the jury. See Tulsa City Lines, Inc. et al. v. Geiger, Okl., 275 P.2d 325, and case cited therein.

We come now to the contention of the defendant Transcon in truck #1. We shall first dispose of the contention urged by it of newly-discovered evidence as one of the grounds for new trial. Briefly stated, defendant alleges false swearing amounting to perjury by the principal witness for plaintiff, the driver of truck #2. In view of our holding in this case, we do not deem it necessary to consider the sufficiency of this ground for reversal.

As grounds of negligence against truck #1, the petition alleges:

1. " * * * suddenly without previous signal or warning brought his truck to an abrupt stop.

2. "* * * were negligent in abruptly stopping their truck and blocking the highway.

3. " * * * violating Title 47 O.S. 121.3(a)" providing for reasonable and proper speed.

4. " * * * negligent in violating Title 47 O.S. 121.5(d) (1)" in not giving signal continuously for the last 100 feet.

5. * * * "negligent in violating Title 47 O.S. 121.5(d) (2)" In stopping without appropriate signal.

6. * * * "negligent in bringing their truck to an abrupt halt.

7. * * * "failed to use due care for the safety of other persons * *."

and that this negligence coupled with the joint and concurrent negligence of truck #3 was the proximate and direct or contributing cause of the accident.

■ The test to be applied is as stated in Syllabus No. 1 of Cities Service Oil Company et al. v. Merritt, Okl., 332 P.2d 677:

"This court will review a verdict founded upon conflicting evidence only for the purpose of determining whether or not it is supported by competent evidence and is not contrary to law and not for the purpose of determining the weight of the evidence; and evidence reasonably tending to prove the essential facts in the case, either directly or indirectly or by permissible inferences, is sufficient to sustain the verdict and judgment based thereon."

With this in mind, we briefly review the evidence.

■■ It is uncontradicted that a signal was given by truck #1 when he was some distance from the bridge. Sec. 121.5 of Title 47 O.S.1951, the statute in effect at the time, provided that the signals required

by statute could be given by signal lamp. It is conceded that these lamps were working and that the signal was given in ample time for truck #2 to bring his vehicle to a stop behind truck #1. To our minds, this eliminates from further consideration Grounds 1 and 5. Since the signal was given, there was no negligence, per se, in stopping truck #1. This is conclusively demonstrated by the fact that truck #2 was able to come to a stop behind truck #1 in the time and within the distance available to him. This disposes of Ground 2. The third Ground alleged is improper speed. At the time of this accident the statute in effect, found in 47 O.S.1951 § 121.-3(f) provided that a truck weighing less than 48,000 lbs. was limited to 50 miles per hour. The undisputed evidence in the record shows that truck #1 weighed approximately 35,000 lbs. and trucks #2 and #3 weighed approximately 55,000 lbs. each; therefore, under the statute, supra, the speed limits for these vehicles varied. The evidence shows that all three were traveling from 40 to 45 miles per hour prior to the accident and that trucks #2 and #3 were slowly overtaking truck #1. Truck #1 was not, under the evidence, violating the speed limit. This eliminates Ground No. 3.

Ground No. 4 states that the signal was not given continuously for the last 100 feet. The only witness in a position to observe the stop lights on truck #1 was plaintiff's witness, driver of truck #2. He testified:

"Q. How long was it—how far did your truck travel from the time you applied your brakes until the time you stopped?

"A. Well, that is something else. I cannot answer truthfully.

"Q. Can you give me your best judgment on it?

"A. About two truck lengths, I guess.

"Q. So you stopped your truck then within a hundred feet, is that right?

"A. Yes, sir."

It is obvious from this, the only testimony in the record on this point, that if you add the distance traveled during the reaction time of driver #2, the signal was given for more than a hundred feet. This, to our minds, eliminates Ground No. 4.

Grounds No. 6 and 7 are not supported under the evidence since truck #2, immediately following, was able to stop without endangering himself or truck #1.

We are aware of the rule that mere compliance with statutory requirements does not relieve a party from responsibility for negligence as a matter of law. See Roadway Express, Inc. v. Baty et al., 189 Okl. 180, 114 P.2d 935, and Garner v. Myers, Okl., 318 P.2d 410.

We are also aware that we said in Norman v. Scrivner-Stevens Co., 201 Okl. 218, 204 P.2d 277, p. 279, that "The question whether the negligence charged was the proximate cause of an injury is to be determined according to the natural and probable consequences." and that "Generally it is held that negligence which only serves to furnish the opportunity for injury cannot be the proximate cause where injury occurs as a direct result of an intervening force. The law does not charge a person with all possible consequences of a wrongful act, but ignores remote causes and looks for the proximate cause of the injury. Upon the basis of repeated consideration the rule gradually evolved is that where the negligence complained of only creates a condition, which thereafter is acted upon by a subsequent independent, unforeseeable, distinct agency and produces an injury, the original negligence is the remote rather than the proximate cause thereof. And, this is true though injury would not have occurred except for the original act. Town of Lyons v. Watt, 43 Colo. 238, 95 Pac. 949; Lemos v. Madden et al., 28 Wyo. 1, 200 P. 791; Jafek v. Public Service Co., 183 Okl. 32, 79 P.2d 813; City of Okmulgee v. Hemphill, supra [183 Okl. 450, 83 P.2d 189]."

In the instant case defendant Transcon in truck #1 avers a complete lack of evidence upon which the jury could find that its actions were the proximate cause of the accident. We are unable to conclude that under the statutes existing at the time the common-law requirements and the evidence here that the driver of truck #1 was required to assume that truck #3 would be following so closely behind truck #2 at such a speed that when proper warning was given by truck #2, he (truck #3) would be unable to bring his vehicle to a stop within the time and distance available. To arrive at a different conclusion under the facts here, would, in our opinion, result in a rule of law that any truck driver, under circumstances here, who gives the required signal before bringing his truck to a stop at the entrance to a narrow bridge, would still be responsible for damage caused by the negligence of the drivers of all following vehicles. To our minds this is untenable.

The presentation of the matters relied upon for reversal of the judgment in this case compelled a careful review of the record to determine whether there was any competent evidence to sustain the jury's verdict. The matters were fully briefed. Careful consideration of the evidence and the applicable law leads us to conclude that there was a total failure of proof that the actions of the Transcon truck immediately before the accident constituted the proximate cause of decedent's injuries. The rule as stated in City of Okmulgee v. Hemphill, supra, and followed in Wilson et al. v. Shawnee Milling Co., Okl., 292 P.2d 147, p. 151, that "The proximate cause of an injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury." is determinative of the issues presented by Transcon.

The judgment of the trial court is reversed with direction to dismiss the action against defendant Transcon Freight Lines and Transport Indemnity Co. The judgment against defendant William Eugene Hall is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and IRWIN and LAVENDER, JJ., concur.

WELCH, DAVISON, JOHNSON, WILLIAMS and JACKSON, JJ., dissent.

JOHNSON, Justice (dissenting).

I respectfully dissent to the majority opinion insofar as it exonerates the defendants Transport Indemnity Company and Transcon Freight Lines from liability. I agree with the opinion holding the defendant Hall liable. I shall endeavor to set forth salient facts and circumstances which I believe were properly considered by the jury and warranted it in returning a verdict against these defendants. The defendants Transcon Freight Lines will be referred to hereafter as Transcon.

Without attempting to subdivide the evidence relative to the different acts of negligence charged in the petition, a recitation of the facts together with the applicable principles of law which I think control in such circumstances is set forth hereafter.

In Carpenter v. Snipes, 203 Okl. 534, 223 P.2d 761, this court announced the following rule:

"* * * Our attention is also called to the rule stated in White v. Rukes, 56 Okl. 476, 155 P. 1184, that: 'The owners of automobiles have the same rights on highways as those riding horseback or traveling by other vehicles, but must use this means of locomotion with due regard for the rights of others. And the speed of the machine, its size, appearance, its manner of movement, the danger of operating it upon the highway, and the like, will be taken into consideration in determining the degree of care required of the operator of the automobile.' Keeping in

mind the foregoing rule, consideration must be given to the speed, size, appearance, manner of movement, and the danger in operating the truck-trailer here involved. It is apparent that the truck-trailer was a large heavy machine, and much more difficult to control than an automobile. * * *"

The rule above quoted is particularly applicable to the Transcon truck. Unusual care is required in operation of a large vehicle. The hazard to travelers upon a highway is still greater when there are three large, heavily-loaded trucks traveling practically in tandem on a well-traveled highway, and the driver of the leading truck observes a narrow bridge and oncoming traffic. The degree of care required under such circumstances is a question of fact for the jury to determine. The evidence disclosing the physical situation from which the degree of care required of defendant was to be measured should be noted carefully.

The undisputed evidence is that Rooker, Transcon's driver, first observed the two large trucks which were following him as they came down a hill when he was about one-half mile from the Dirty Creek bridge. At this time they were approximately a quarter-mile behind his truck. Rooker was traveling about 45 m. p. h. When within 600 or 700 feet of the bridge, he saw decedent Page's car about the same distance east of the bridge. At the same time he observed that Henry's truck was 300 to 400 feet behind him, although Henry testified he was about two truck lengths or 100 feet behind Rooker as they approached the bridge. At this point, having observed how the Henry truck had gained, it should have been apparent to Rooker that, at the rate of speed the trucks were traveling, there was a possibility the Henry truck might be trying to pass him about the time they reached the bridge.

The defendant Transcon claims compliance with the requirements of the statute 47 O.S.1951 § 121.5(d) (1), (2) and (e), which requires that a signal of intention to turn, slow or stop shall be given continuous-ly during not less than the last 100 feet traveled by a vehicle before turning or stopping; that no person shall suddenly decrease speed or stop a vehicle without first giving an appropriate signal; that a stop or turn signal shall be given by hand or arm, a signal lamp or lamps or other mechanical device.

Whether the defendant met the requirements of this statute was a question for the jury under the instructions given by the court. We have held that mere compliance with a statutory duty is not sufficient to relieve the party from responsibility for negligence as a matter of law.

Rooker alone knew of the narrow bridge, although the record shows there was ample room for him to pass on the bridge. There were no circumstances that would require Henry, Hall or Page to assume Rooker would stop at the bridge. Rooker testified he geared his truck down upon observing the Page car and was traveling 30 m. p. h. while "waiting" for Page to clear the bridge. Slowing his truck by changing gears did not activate the brake lights, and so provided no warning to the following traffic. Henry testified he did not see Rooker's brake lights until the Transcon was about 100 feet from the bridge. Thus the evidence shows Rooker maintained a constant speed after changing gears until he applied his brakes about 100 feet from the bridge. If a driver of a truck of the size and weight of the Transcon truck only applied its brakes when within about 100 feet of the bridge and stopped within that distance, it could not have been anything but an abrupt stop. The Henry truck, behind the Transcon truck, applied his brakes when he saw the brake lights of the Transcon and was able to stop only a few inches behind the Transcon truck.

Under such evidence the jury was justified in finding Rooker brought his truck to an abrupt stop at the bridge entrance. The Henry and Hall trucks were heavily loaded with a visibly bulky load, while Rooker knew he had a light load. Rooker was charged with knowledge the truck fol-

lowing him undoubtedly were more heavily loaded and would be unable to stop as quickly as his lighter truck.

Henry first saw the Transcon's brake lights flash "about" 100 feet from the bridge. "About" cannot reasonably be taken as fixing the precise distance and could be 90 feet or 110 feet. And, Henry did not know whether the lights remained on continuously. Rooker's testimony of having changed gears to slow down established that his brake lights would not have been on prior to his stopping, and this would have been sufficient to justify the jury in finding he failed to give the statutory warning. However, even conceding the minimum warning required under the statute was given, this in itself was insufficient to relieve him of responsibility for negligence in view of the circumstances that neither Henry, Hall, nor the deceased, had notice of his intention to stop at the bridge. This is particularly true under application of the rule in Roadway Express, Inc. v. Baty et al., 189 Okl. 180, 114 P.2d 935, 937, which declares that mere compliance with a statutory duty is not sufficient to relieve a person from liability for negligence.

The majority opinion purports to acknowledge the rule of the Baty case, supra, to the effect that a large vehicle which obscures the view of the following traffic must use a greater degree of care to warn of danger or hazards which cannot be observed. But the opinion attempts to avoid the effect of the rule simply by declaring that under no rule of law was Rooker required to assume Hall would be following so closely behind Henry's truck as to be unable to stop upon receiving proper warning. This conclusion is reached contrary to the findings of a properly instructed jury whose verdict received the trial court's approval.

The rule in such cases is stated in Simpson, etc. v. Snellenburg et al., 96 N.J.L. 518, 115 A. 403, 24 A.L.R. 503 wherein syllabi 1 and 2 state:

"The driver of a truck which prevents persons riding behind it from seeing the road ahead, who, with knowledge that a bicycle rider is close behind him, when he is going rapidly down hill, suddenly stops without warning just as automobiles coming from the opposite direction are about to pass him, so that the bicycle rider, to avoid collision with the truck, is forced into the roadway directly into the path of the on-coming automobile, and injured, is guilty of negligence which will render him liable for the injury to the bicycle rider.

"One operating upon a highway a motor truck of such size that it prevents those riding behind it from observing the conditions which they should know for their safety is bound to use a reasonable degree of care that timely and ample warning be given them of approaching danger."

The quoted rule received the approval of this court in Union Transp. Co. v. Lamb, 190 Okl. 327, 123 P.2d 660. In all such cases determination of the question whether a reasonable degree of care was used in warning of approaching danger is for the jury to determine.

The effect of the majority opinion is to say that one guilty of acts and omissions as Rooker was shown to be cannot be found guilty of negligence as a matter of law since, if there was minimum compliance with a statutory requirement, other circumstances considered by the jury are to be disregarded.

Henry testified Rooker's truck obscured his view. In this connection he was asked:

"Q. How far would you say this Transcon truck was from the west end of the bridge when you first saw its brake light come on?

"A. I don't know.

"Q. Approximately?

"A. I didn't see the bridge. I could not see the bridge about that time.

"Q. Couldn't see the bridge?

"A. Not for him."

Hall testified Henry's truck obscured his view. Both Hall and Henry testified they were unable to see either the bridge or deceased's approaching car. The jury was justified in concluding if the view had not been obscured by defendant's truck each would have slowed his truck upon observing the bridge and Page's car, since it is customary to slow down rather than pass another vehicle on a narrow bridge at an unreasonable speed. Rooker was charged with knowledge the following drivers were unable to see the bridge or deceased's approaching car. And, the jury was justified in finding Hall would not have turned into deceased's lane of traffic had not the view been obstructed. Under all the evidence the jury was justified in finding Rooker should have given the vehicles following him warning of the bridge and deceased's car when he first observed the conditions, rather than waiting to apply his brakes "about" 100 feet from the bridge.

Only Rooker knew of his desire to avoid passing the deceased on the bridge because he considered it unsafe, despite the evidence there was ample room to pass safely. Yet, when Rooker first saw deceased's car, both were 600 to 700 feet from the bridge and approaching at the same rate of speed and most probably would meet on the bridge. Rooker did not at that time give any warning of conditions ahead which might necessitate his stopping at the bridge, which only he could see. Instead, he merely shifted gears to slow his speed, which gave no warning of approaching hazards. Then, having misjudged the distance, when about 100 feet from the bridge, according to plaintiff's evidence, he brought his vehicle to a stop without prior warning of dangerous traffic conditions or his intention to stop. Rooker denies that he stopped.

The evidence shows Henry observed Rooker's brake light when "about" 100 feet from the bridge and thereupon applied his own brakes and stopped as quickly as possible, but only inches from defendant's truck. With the lighter load Rooker stopped within 100 feet, but with a heavier load Henry barely was able to stop in approximately 200 feet.

Henry testified on direct examination as follows:

"Q. All right, now as you approached Dirty Creek Bridge did anything unusual happen?

"A. Yes, sir.

"Q. Tell this jury what happened?

"A. Well, just as we got to the bridge this truck stopped.

"Q. Now, Mr. Henry, the statement has been made here that that truck slowed down but didn't stop. Tell this jury, did it stop.

"A. Yes, sir, it stopped.

"Q. You know that?

"A. Yes, sir.

"Q. All right, go ahead.

"A. He had slowed down a little bit and I had started to slow down and just before he got on the bridge, why he stopped right in front of me, and I had to stop, the fact of the business, I like to hit him."

And again on cross-examination Henry testified:

"Q. Did you see any brake lights on the Trans-Con truck?

"A. Yes, sir.

"Q. When did you see those?

"Q. Just before he stopped."

This evidence was sufficient upon which the jury could base a finding that Rooker made an abrupt stop in front of the bridge. Expert testimony on both sides agreed that Hall would require a greater distance to stop, since he would have no reaction until Henry's brake lights were visible. The evidence was sufficient for the jury to conclude that Rooker failed to give adequate or reasonable warning to the following vehicles of a traffic hazard ahead.

Carpenter v. Snipes, supra, lays down the rule that a driver of a leading vehicle

owes a positive duty to *all* following as well as to approaching traffic.

In Union Transp. Co. v. Lamb, supra, the court considered a similar situation. A passenger in a following vehicle sought damages from the bus company for injuries allegedly incurred as a result of the bus stopping abruptly in the highway, causing the following vehicle to collide with an approaching vehicle. This court sustained a jury verdict in favor of the passenger against the bus company. This was upon the theory the bus had obscured the view of the following vehicle, and the sudden stopping of the bus in the highway justified the jury in finding the bus driver guilty of negligence. The court specifically declared that negligence of the driver of the following vehicle in violating the statute, by being unable to stop in the assured clear distance ahead, could not be imputed to the passenger. Upon the same reasoning, it follows that no negligence of Hall should be imputed to Page. Because the view of the following vehicles was obscured, and because the facts and circumstances warranted the jury in believing that Rooker stopped abruptly at the bridge without prior warning, the jury properly concluded Rooker was guilty of negligence.

Without exception the cited cases recognize that all circumstances are to be considered in determining the question of negligence resulting from stopping or turning in the highway. Greater care is required in stopping or turning in a well-traveled highway. The place where the stopping or turning occurs is an important factor to be considered. Rooker knew the following trucks were gaining distance. He could see the guard rails on both sides of the highway. He should have recognized that if he stopped at the bridge without the following trucks having adequate warning of approaching hazards, one or both would be unable to stop safely in the lane of traffic. The driver of the trapped truck, being confined to the highway by the guard rails, would probably turn left in front of the approaching traffic, and the approaching traffic would be unable to turn off the highway because of the guard rails. Clearly, Rooker's stopping at the bridge entrance under the circumstances created a trap for both Page and the following vehicles. It should have been apparent to a reasonable, prudent driver that stopping at the bridge would create a severe hazard for both the following and the approaching traffic.

The authorities cited uniformly express the rule that the jury may consider the place of stopping as a factor in determining the question as to existence of negligence under the particular circumstances. The majority opinion overlooks the evidence bearing upon any factors other than the giving of a minimum warning.

The basic issue upon which liability was predicated was that of concurrent negligence. Inasmuch as Hall's negligence is admitted, the question to be resolved by the jury was whether defendant, through its agent Rooker, was guilty of any negligence which combined to produce an injury which would not have occurred in the absence of negligence on the part of either defendant. This court has defined concurrent negligence so often as to not require citation of authority.

The acts and omissions complained of on the part of Rooker were shown by evidence which the jury concluded displayed lack of reasonable care and therefore constituted negligence. The sole test is whether an accident would have occurred had not the view been obscured and had not Rooker stopped without giving adequate prior warning. This case was peculiarly one for the jury. The standard of liability is negligence. The question is what a reasonable and prudent person would have done under the circumstances. The jury considered the evidence relative to these matters and concluded the acts complained of concurred with other negligence to produce the injury. The issue was determined properly by application of the controlling test.

The decisions in Norman v. Scrivner-Stevens Company, 201 Okl. 218, 204 P.2d 277, and Wilson v. Shawnee Milling Com-

pany, Okl., 292 P.2d 147, are relied upon as authority to sustain the argument that defendant's negligence was neither the proximate or a contributing cause of the injury.

In the Norman case, supra, the court reviewed at length the definition and elements of proximate cause as laid down in our early decisions. The defendants rely upon this decision, by particular reference to certain language appearing therein, as establishing that under consideration of "logic, common sense, justice, policy and precedent" the defendant's negligence cannot be said to have been the proximate cause of the injury in this case.

"Proximate cause" also has been defined so often by this court as not to require citation of authority or restatement of the definition by quotation from our decided cases. Every case decided by this court involving the issue will disclose that in each instance where an efficient cause sets in motion a chain of circumstances resulting in injury to an innocent party, such negligent act is held to be the proximate cause of the injury. In the Norman case, supra, the decision recognizes and applies as a test that a negligent act cannot be the proximate cause of injury unless the accident could have been avoided in the absence thereof. Consideration of this factor alone sufficiently supports the jury's determination of the issue. No serious argument could be made that this fatal accident would have occurred even though defendant's truck had not stopped as it did at the bridge entrance.

The majority opinion cites and relies on the case of Wilson v. Shawnee Milling Co., supra. The majority opinion cites a legal expression contained in the opinion in that case which expression is not applicable to the facts in the present case. The facts in the cited case, as in this case, are very similar, and in the cited case the jury was properly instructed, as in the present case, and its finding that the combined or concurrent negligence on the part of both defendants was the cause of the injury was upheld by this court. A careful reading of the cited cause should be convincing as being in favor of plaintiff's recovery against both defendants.

The Shawnee Milling Co. case, supra, syllabus one, states:

"Where, although concert is lacking, the separate and individual acts of negligence of several persons combine to produce directly a single injury, each is responsible for the entire result even though the act of one person alone may not be the cause of the injury."

The rules announced in the Wilson case supported by other cases decided by this court do not sustain the defendant's proposition.

Under the rule in Union Transp. Co. v. Lamb, supra, Rooker owed a duty to all following traffic. Under this rule the existence of negligence, and the question whether such negligence constituted the proximate cause, cannot be determined by considering *only* the negligence of the leading vehicle as applied *only* to the vehicle immediately behind. This is precisely what the majority opinion attempts to do when it declares Rooker could not have been guilty of any negligence as a matter of law. In Garner v. Myers, Okl., 318 P.2d 410, 411, at page 415 we said:

"* * * Neither in our statutes, nor in the common law, is there attempted a prescription of everything that should, or should not, be done in a situation such as existed in this case when the Defendant's and Plaintiff's autos were approaching each other. In such case, where the standard of human conduct by which the negligence of the parties, or their lack of it, must be adjudged, is not fully prescribed by law, the determination of the matter must be left to the jury under the guidance of proper instructions of the court. See Dickinson v. Whitaker, 75 Okl. 243, 182 P. 901; City of Cushing v. Stanley, 68 Okl. 155, 172 P. 628; Ponca City Ice Co. v. Robertson, 67 Okl. 86, 169 P. 1111; 38 Am.Jur., 'Negligence', sec. 346, notes 15, 17, 19, secs. 14, 22, 24 and 30. And

this holds true (contrary to plaintiff's contention that verdicts should be directed by the court in cases where there is no dispute as to the facts) even in cases where the facts are undisputed, if reasonable men might draw different conclusions from them. Hudson v. Blanchard, Okl., 294 P.2d 554."

Twelve jurors, under proper instructions, concluded from the evidence that Rooker was guilty of concurrent negligence, which finding was approved by the trial court. How can it be said that the minds of reasonable men cannot differ when twelve jurors, the trial court, and a substantial number of the members of this Court have reached an opposite conclusion from that announced by the majority opinion.

It is respectfully submitted that, even though a single one of the circumstances shown by the evidence might not be sufficient to show negligence, nevertheless all the facts adduced at the trial leave no doubt as to the sufficiency of the evidence to be considered by the jury and to support the verdict rendered.

Under the record in this case the jury could find among other things that:

1. That the deceased Page was not negligent.

2. That Rooker failed to comply with the statute.

3. That greater care is required of heavy trucks traveling upon the highway.

4. That the view of the trucks following behind Rooker was obscured, thus requiring greater care on the part of the Transcon truck.

5. That more caution was required of Rooker after he saw the bridge ahead and the approaching Page auto, and knowing that the Henry truck was only 100 feet behind him.

6. That after seeing the Page auto coming east of the bridge he (Rooker) only geared his truck instead of braking, thereby giving no warning to the truck following him, which according to plaintiff's testimony, was a good two truck lengths behind him.

7. That while Rooker saw the Page car approaching the bridge when he was 600 to 700 feet from the bridge he waited until he was only about 100 feet before putting on his brakes, which was insufficient notice to the Henry truck following about 2 truck lengths behind and the Hall truck which was about the same distance behind the Henry truck.

8. That there was no occasion for Rooker to stop at the bridge as there was ample room for cars to pass on the bridge.

9. That Rooker knew that with a light load he could and did stop quicker than the trucks behind him.

10. That by stopping at the bridge he formed a trap. He alone knew of his intent to stop. The other trucks behind him had no reason to suspect that he intended to stop.

11. Rooker testified that he saw the Page car approaching from the east when he, Rooker, was within 600 to 700 feet west of the bridge, and that he geared his truck to 30 m. p. h. and continued at that rate across the bridge, never stopping. If he did this, then there would have been no occasion for the Henry truck to stop, thereby forcing the Hall truck out of its traffic lane. The jury was warranted in believing that he stopped, as Henry testified.

12. That by reason of the acts and omissions by Rooker, the defendant Transcon was negligent, and its negligence concurring with that of Hall produced plaintiff's injury.

The fact remains, and the jury so found, that if the Transcon truck (No. 1) had not stopped, the Henry truck (No. 2) would not have stopped, and the Hall truck would not have been forced out of its lane, and the fatal accident would not have happened. Had the Transcon truck continued on across the bridge at his geared-down speed, as he could have safely done, the Henry truck 100 feet behind him and the Hall truck 300 feet behind Henry could have

pursued their course without any trouble, and Page would be alive today.

These questions were answered by the jury in their verdict.

The issue in this case was as to the existence of negligence on the part of the defendants, and whether such negligence was the proximate cause of injury. In such instances the applicable rule is that stated in syllabus 1 of Sunray Mid-Continent Oil Co. v. Tisdale, Okl., 366 P.2d 614:

"Negligence may be established from circumstantial evidence; and where reasonable men might draw different conclusions from the evidence, the question of negligence and question of proximate cause of the injury or damage must be left to the jury."

The trial court believed the evidence was such the minds of reasonable men might differ in determining the issues. For this reason determination of these issues was left to the jury under proper instructions. We have consistently held that a demurrer to the evidence cannot be sustained unless the evidence is such that the minds of reasonable men could not differ.

I respectfully submit that the foregoing facts and circumstances justified the jury in finding Transcon guilty of concurrent negligence.

I am authorized to say that Justices WELCH and DAVISON concur in these dissenting views.

WILLIAMS, Justice (specially concurring in result in part and dissenting in part):

I concur specially in the result achieved in the majority opinion to the extent only of the reversal of the judgment of the trial court.

I respectfully dissent to the entering of an order for the dismissal of plaintiff's action as against defendants Transport Indemnity Company and Trans-Con Freight Lines.

I feel the subject judgment should be reversed because of errors in the reception of the testimony of an expert witness, in the instructing of the jury and in the denial of motion for a new trial in connection with those matters and because of the giving of apparently false testimony by an important eye-witness to the collision on which the suit is based.

I do not agree that the Court may say that certain evidence finally serves to completely nullify and dispatch all of plaintiffs' various grounds of complaint. That a person may have complied with his statutorily prescribed duties in a given respect may hardly be grounds for saying the jury under proper evidence still could not find him guilty of negligence under principles of common law of broader scope than the narrow requirements of a statute.

Specifically, had there been no error in the proceedings, I believe that the jury may properly have been warranted in finding from the evidence in this record that Trans-Con's driver was negligent in driving its truck, eight-feet wide and 11½ feet tall, up to a narrow bridge and suddenly slowing or stopping at a time when he knew he was being closely followed by heavily-laden trucks, and that plaintiff's decedent was coming to meet him with his left wheels a foot over the center line of the roadway and at a point where posts driven into the ground prevented those behind him from moving to their right.

The grounds of error upon which I believe the trial court may well have been reversed were covered in the third, fourth and fifth propositions of plaintiff in error. No worthwhile purpose apparently would be served by further reference to those.

I therefore concur specially in the reversal but dissent to the ordering of dismissal in the trial court as to the named two defendants.