BURKE, Chief Justice.
[¶1] Misty Wood, on behalf of the Estate of David L. Crashley (the decedent), brought a wrongful death action against CRST Expedited, Inc. (CRST), a commercial trucking company, and two of its drivers. Ms. Wood alleged the drivers illegally and negligently parked a CRST semi tractor-trailer in an I-80 emergency lane and caused the decedent's death when the vehicle he was driving collided with the tractor-trailer. The district court found that parking the tractor-trailer in the emergency lane was not, based on the undisputed facts, a proximate cause of the accident, and entered summary judgment in favor of Appellees. We reverse.
ISSUE
[¶2] Ms. Wood presents a single issue on appeal, which we rephrase as:
Were there disputed issues of material fact that precluded the district court's entry of summary judgment?
FACTS
[¶3] At around midnight on the night of February 10, 2014, Jared Chavez and Luis Fontanez-Bermudez, two CRST drivers, set out from Salt Lake City, Utah, driving a CRST tractor-trailer eastbound on I-80. Mr. Chavez took the first driving shift while Mr. Fontanez-Bermudez slept in the sleeper berth. At around 6:45 a.m., on February 11th, approximately one mile west of Rawlins, Mr. Chavez pulled over, parked the tractor-trailer in the emergency lane, turned on the tractor-trailer's hazard lights, and informed Mr. Fontanez-Bermudez that he felt drowsy and wanted to change drivers. Mr. Chavez parked the tractor-trailer such that portions of the rig were within ten inches of the eastbound lanes of I-80. The location where Mr. Chavez parked the tractor-trailer was 1.05 miles past an off ramp leading to a truck stop, and .85 miles from the next highway exit. Multiple signs leading up to the location where Mr. Chavez pulled over indicated that parking was not allowed except for "emergency" purposes.
[¶4] Within minutes after Mr. Chavez stopped the tractor-trailer, the decedent, driving a Mazda CX-9 at or near highway speeds, collided with the rear of the tractor- *506 trailer. The speed limit on that portion of the highway was 75 m.p.h. It appears to be undisputed that the tractor-trailer was parked completely within the emergency lane at the time of the collision.[1]
[¶5] At the time of the accident, the weather was clear, the road was dry, and it was dawn, with the sun still below the horizon. There were no signs that the decedent braked or attempted to avoid the collision, and it is not known why the decedent failed to maintain his proper lane of travel. The decedent suffered immediately fatal injuries, and Mr. Chavez was cited for illegally parking in an emergency lane.
[¶6] On January 26, 2016, Ms. Wood filed a wrongful death complaint against CRST, Mr. Chavez, and Mr. Fontanez-Bermudez, followed by an amended complaint on February 4, 2016. Ms. Wood alleged that Mr. Chavez and Mr. Fontanez-Bermudez were negligent in their illegal parking of the CRST tractor-trailer in the I-80 emergency lane. She further alleged that CRST was negligent in its training and supervision of its drivers and was also vicariously liable for the drivers' negligence. Appellees filed timely answers to the amended complaint.
[¶7] On November 17, 2016, Appellees filed a motion for summary judgment. Appellees asserted they were entitled to summary judgment as a matter of law because Mr. Chavez's act of parking in the emergency lane, even if illegal, was not the proximate cause of the decedent's accident. On January 11, 2017, Ms. Wood filed her opposition to Appellees' summary judgment motion. After a hearing, the district court granted the motion for summary judgment. This timely appeal followed.
STANDARD OF REVIEW
[¶8] We apply the following standard of review to a district court's summary judgment decision:
Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c) ; Metz Beverage Co. v. Wyoming Beverages, Inc. , 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." Id. Because summary judgment involves a purely legal determination, we undertake de novo review of a trial court's summary judgment decision. Glenn v. Union Pacific R.R. Co. , 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo. 2008).
Fugle v. Sublette Cty. Sch. Dist. No. 9 , 2015 WY 98, ¶ 5, 353 P.3d 732, 734 (Wyo. 2015). We consider the record from a viewpoint most favorable to the party opposing summary judgment, giving that party all favorable inferences that can be drawn reasonably from the facts set forth in the affidavits, depositions, and other material properly appearing in the record. Id.
DISCUSSION
[¶9] The issue of proximate cause is generally one to be decided by the jury, and resolution of that issue depends on the foreseeability of the risk presented by the actor's conduct. Endresen v. Allen , 574 P.2d 1219, 1222 (Wyo. 1978) ("[W]hat is reasonably to be foreseen is generally a question for the jury."). According to one respected commentator:
The central goal of the proximate cause requirement is to limit the defendant's liability to the kinds of harms he risked by his negligent conduct. Judicial decisions about proximate cause rules thus attempt *507 to discern whether, in the particular case before the court, the harm that resulted from the defendant's negligence is so clearly outside the risks he created that it would be unjust or at least impractical to impose liability.
...
The most general and pervasive approach to proximate cause holds that a negligent defendant is liable for all the general kinds of harms he foreseeably risked by his negligent conduct and to the class of persons he put at risk by that conduct. Conversely, he is not a proximate cause of, and not liable for injuries that were unforeseeable. This does not mean that the defendant must be the sole proximate cause of the plaintiff's injury. On the contrary, several wrongdoers are frequently proximate causes of harm.
Dan B. Dobbs, The Law of Torts § 180, at 443-44 (2000) (footnote omitted).[2]
[¶10] In order to evaluate whether there is a factual issue regarding proximate cause in this case, it is essential that we understand the proper causal connection that must be established. The parties offer differing perspectives on that issue. Appellant contends that the proper test of proximate cause involves an analysis of the relationship between the conduct of Mr. Chavez in illegally parking on the shoulder of the highway and the injuries suffered by the decedent. "The focus of the analysis is whether 'reasonable minds' can reach different conclusions regarding the proximate cause of [the decedent's] death." Appellees contend that Appellant must establish that the act of parking on the shoulder caused the decedent to lose control of his vehicle. According to Appellees: "[P]arking on the side of the road would not, in ordinary experience, be expected to cause someone to leave the lanes of travel. As such, parking on the side of the road cannot be a cause of this accident."[3] The district court applied the standard proposed by Appellees and set forth the basis for its decision in the order granting summary judgment:
Defendant[s'] parking at that spot and time, whether or not it was legal, simply did not cause this accident. Nothing about parking in the emergency lane caused [the decedent] to drive into the back of the trailer. While it greatly aggravated the consequences of [the decedent's] conduct, Defendants' unlawful stop in the emergency lane did not cause [the decedent] to leave the lanes of travel in his vehicle and drive in the emergency lane.
For reasons that we explain below, we must conclude that the district court did not apply the proper standard. Appellant is not required to prove that parking on the shoulder of the highway caused the decedent to lose control of his vehicle. Rather, he must prove that parking on the shoulder of the road was a proximate cause of his injuries. "[T]he ultimate test of proximate cause is foreseeability of injury. In order to qualify as a legal cause, the conduct must be a substantial factor in bringing about the plaintiff's injuries ."
*508 Lucero v. Holbrook , 2012 WY 152, ¶ 17, 288 P.3d 1228, 1234 (Wyo. 2012) (emphasis added).
[¶11] This is a negligence case. Negligence consists of a duty on the part of the defendant and a violation of the duty which proximately causes injury to the plaintiff. ABC Builders, Inc. v. Phillips , 632 P.2d 925, 931 (Wyo. 1981). Stated in terms of the allegations in this case, the questions that must be answered are: Did Mr. Chavez owe a duty to the decedent and others similarly situated? Did he breach that duty by parking his tractor-trailer rig on the shoulder of I-80? Did breach of that duty proximately cause injury to the decedent? Ostensibly, this appeal involves only the issue of proximate cause but, in this case, a proper proximate cause determination cannot be made without exploration of the duty owed to the decedent. Duty, like proximate cause, involves the question of foreseeability:
The primacy of foreseeability in determining whether a duty exists has been echoed by numerous courts and commentators. For example, in Beugler v. Burlington Northern & Santa Fe Ry. , 490 F.3d 1224 (10th Cir. 2007), the Tenth Circuit Court of Appeals stated that
Many factors inform the duty analysis, but the most important consideration is foreseeability. Generally a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous. Foreseeability establishes a 'zone of risk,' which is to say that it forms a basis for assessing whether the conduct creates a generalized and foreseeable risk of harming others.
Id. at 1228 (quoting Iglehart v. Bd. of County Comm'rs of Rogers County , 60 P.3d 497, 502 (Okla. 2002) ); see also Henderson v. United States , 846 F.2d 1233, 1234 (9th Cir. 1988) ; Winschel v. Brown , 171 P.3d 142, 146 (Alaska 2007) ; 57A Am.Jur.2d Negligence § 121, at 196 (2004) ("The most important consideration in the determination of whether the defendant owed the plaintiff a duty is whether the defendant was foreseeably endangered by the defendant's conduct.") (footnote omitted).
Glenn v. Union Pac. R. Co. , 2011 WY 126, ¶ 34, 262 P.3d 177, 193-94 (Wyo. 2011).
[¶12] We have not had the occasion to address proximate cause in a factually similar context. However, the California Supreme Court addressed foreseeability issues in a case presenting facts nearly identical to those in this case. Cabral v. Ralphs Grocery Co. , 51 Cal.4th 764, 122 Cal.Rptr.3d 313, 248 P.3d 1170 (2011). In Cabral ,
[a] truck driver working for Ralphs Grocery Company (Ralphs) stopped his tractor-trailer rig alongside an interstate highway in order to have a snack. Plaintiff's husband, decedent Adelelmo Cabral, driving his pickup truck home from work, veered suddenly off the freeway and collided at high speed with the rear of the stopped trailer, resulting in his own death. (Cabral was not intoxicated at the time; experts opined he either fell asleep at the wheel or lost control due to an undiagnosed medical condition.) The jury found both decedent and the Ralphs driver to have been negligent and to have caused the accident, but allocated 90 percent of the fault to decedent and only 10 percent to the Ralphs driver.
Id. , 122 Cal.Rptr.3d 313, 248 P.3d at 1172.[4] Appellants challenged the verdict on appeal, asserting that Ralphs "owed Cabral no duty to avoid stopping near the freeway for a nonemergency." Id. , 122 Cal.Rptr.3d 313, 248 P.3d at 1176. The court framed the issue as
whether a freeway driver owes other drivers a duty of ordinary care in choosing whether, where and how to stop on the side of the road. Because the general duty to take ordinary care in the conduct of one's activities ... indisputably applies to the operation of a motor vehicle, the issue is also properly stated as whether a categorical exception to that general rule *509 should be made exempting drivers from potential liability to other freeway users for stopping alongside a freeway.
Id. In evaluating whether a duty existed, the court first considered "the foreseeability of harm to the plaintiff" arising from the defendant's conduct. It had no difficulty in concluding that potential harm to other motorists was "clearly foreseeable." Id. , 122 Cal.Rptr.3d 313, 248 P.3d at 1177.
In the generalized sense of foreseeability pertinent to the duty question, that a vehicle parked by the side of a freeway may be struck by another vehicle leaving the freeway, resulting in injury to either vehicle's occupants, is clearly foreseeable. Drivers are supposed to control their vehicles and keep them on the traveled roadway, but common experience shows they do not always do so. Freeway drivers may be intoxicated, distracted, blinded by the weather or sun, sleepy or sick, and for any of these reasons or others may drive off the roadway. Mechanical problems with their vehicles can also force motorists to suddenly leave the freeway. If they do so at freeway speeds and collide with another vehicle parked alongside the road, they are likely to be injured or injure other occupants of the vehicles, or both. This general foreseeability is reflected in the Official Reports, in that numerous decisions have involved collisions between vehicles leaving a highway and vehicles or other obstacles on the roadside. As we observed in Bigbee v. Pacific Tel. & Tel. Co. (1983) 34 Cal.3d 49, 58, 192 Cal.Rptr. 857, 665 P.2d 947 (albeit in discussing an issue of breach, not duty), "it is not uncommon for speeding and/or intoxicated drivers to lose control of their cars and crash into poles, buildings or whatever else may be standing alongside the road they travel-no matter how straight and level that road may be."
Evidence at trial showed that safety standards and guidelines have been formulated with the goal of avoiding collisions between vehicles leaving freeways and trucks or other obstacles alongside the freeway. A highway engineer testified that freeway safety standards disapproved placing any "massive obstacle" within 30 feet of the traffic lanes. Where feasible, existing obstacles-objects massive or large enough to cause rapid deceleration or change in direction to a vehicle leaving the freeway-are to be removed. Where they cannot be removed, relocated or redesigned to bend or break, they are to be protected with guardrails or similar devices. The Ralphs transportation manager in charge of driver training and discipline testified that when he learned Ralphs drivers were stopping on the freeway side for nonemergency reasons he instructed them not to do so. He regarded such stopping as a danger to the drivers themselves and to other motorists "should they leave the roadway." The existence of guidelines seeking to keep the shoulder area free of massive obstacles supports a conclusion the possibility of vehicles leaving the freeway and colliding with obstacles is generally foreseeable.
Id. , 122 Cal.Rptr.3d 313, 248 P.3d at 1177-78 (footnotes omitted).
[¶13] The court also rejected a defense claim that there was not a sufficiently close connection between the defendant's negligence and the collision.
Unlike the situations in Bryant -and Richards -no third party negligence intervened between the Ralphs driver's negligent conduct and Adelelmo Cabral's injury. Ralphs did not merely place[ ] decedent in a position to be acted upon by [a] negligent third party. Rather, the conduct of the Ralphs driver that the jury found negligent, stopping his tractor-trailer alongside an interstate highway for a nonemergency reason, placed by the roadway a massive, if temporary, obstacle not previously there. It thus directly created the risk of collision for any vehicle leaving the freeway at that point, the same risk that eventuated and resulted in Cabral's death.
Id. , 122 Cal.Rptr.3d 313, 248 P.3d at 1181 (quotation marks and citation omitted).[5] The *510 court went on: "To the extent Horn acted negligently in stopping alongside the freeway, as the jury found he did, it is because he unreasonably created a risk of precisely the type of event that occurred." Id.
[¶14] The court also rejected Ralphs' claim that the stop was not a proximate cause of the collision.
While potential liability differs in the two situations (emergency and nonemergency), causation does not. Under the evidence at trial, a jury could find Horn's stop was a substantial factor in causing the collision whether or not it was made for an emergency-though if made for an emergency, the stop would presumably not have been found negligent.
Id. , 122 Cal.Rptr.3d 313, 248 P.3d at 1184 (emphasis omitted).
[¶15] In Cabral , the court found that a duty existed under the general duty of ordinary care owed by drivers to one another. We have recognized a similar duty in Wyoming. "One owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." McClellan v. Tottenhoff , 666 P.2d 408, 412 (Wyo. 1983), superseded by statute on unrelated grounds , as recognized in Daniels v. Carpenter , 2003 WY 11, 62 P.3d 555 (Wyo. 2003) (quoting Alegria v. Payonk , 101 Idaho 617, 619, 619 P.2d 135, 137 (1980) ).
[¶16] There is also another source for finding that Mr. Chavez owed a duty to the decedent and other motorists using that portion of I-80. Reasonable inferences from the evidence in the record support the allegation that Mr. Chavez parked illegally on the shoulder.[6] He received a citation for violating Wyo. Stat. Ann. § 31-5-504(a)(i)(M) (LexisNexis 2017) which provides:
(a) Except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or traffic-control device, no person shall:
(i) Stop, stand or park a vehicle:
...
(M) At any place where official traffic-control devices prohibit stopping.
Traffic signs in the vicinity prohibited parking on the shoulder unless the parking was for "emergency" purposes. Violation of a statute is, at a minimum, evidence of negligence if the purpose of the statute is, in whole or part, "to protect a class of persons which includes the one whose interest is invaded." Distad v. Cubin , 633 P.2d 167, 175 (Wyo. 1981). If the violation is unexcused and the legislative enactment is adopted by the Court as defining the standard of conduct of a reasonable person, the violation "is negligence in itself." Frost v. Allred , 2006 WY 155, ¶ 12, 148 P.3d 17, 21 (Wyo. 2006). Determination of whether the statute applies in this case is relevant to the issue of foreseeability. If the statute applies and is relevant to determining the standard of care or duty, it is so only because the statute was intended to protect the class of persons that includes the decedent. In other words, if the statute applies, it does so because injury to motorists on I-80 arising from the conduct was foreseeable. There is nothing in the record to indicate that the statute under which Mr. Chavez was cited was not intended to protect motorists on that portion of I-80. In the summary judgment context, reasonable inferences would place the decedent in the class of individuals intended to be protected by the *511 statute and the prohibition against parking. If potential harm to the decedent was foreseeable for purposes of establishing duty, it is also foreseeable for purposes of establishing proximate cause.
The thrust of the rules about class of person and type of risk, harm, or interest is sometimes expressed by saying that violation of the statute is not negligence per se unless violation is a proximate cause of the harm suffered. Proximate cause is part of the language of common law tort analysis that is often equivalent to the class of person/type of risk or harm analysis in cases of statutory violation. The class of person/type of risk or harm language may be a little more precise, but courts usually appear to have the same ideas in mind when they use the language of proximate cause.
Dobbs, § 137, at 325-26.
[¶17] Although it does not appear to be an issue in the case before us, we would also note that the Cabral court specifically rejected a request for a liability limitation based upon public policy considerations. The court determined that there was no justification for "creating a duty exception immunizing drivers from potential liability for negligently stopping their vehicles alongside freeways." Cabral , 122 Cal.Rptr.3d 313, 248 P.3d at 1181-82. As the Cabral court recognized:
Indeed, one might ask under what circumstances Ralphs would have us recognize a duty of ordinary care in stopping alongside a freeway, if not in these. If stopping 16 feet from the traffic lanes exempts a driver from the duty of care, does the same hold for parking six feet from the lane? Six inches? If we are to create immunity for a truck driver stopping for a few minutes to have a snack, should we also do so for one who decides to sleep for hours by the roadside rather than pay for a motel room? Would the categorical exemption Ralphs seeks still apply if a tractor-trailer driver parked an inch from the traffic lanes, on the outside of a curve, leaving the rig there all night without lights? To ask these questions is to see why a categorical exemption is not appropriate. The duty of reasonable care is the same under all these circumstances; what varies with the specific facts of the case is whether the defendant has breached that duty. That question, as discussed earlier, is generally one to be decided by the jury, not the court.
Id. , 122 Cal.Rptr.3d 313, 248 P.3d at 1183 (emphasis omitted).
[¶18] We agree with the reasoning of the California Supreme Court. The dangers to highway users presented by a parked tractor-trailer along I-80 are no less foreseeable in Wyoming than they are in California. In Cabral , the parked vehicle arguably posed less of a danger. It was parked 16 feet off the traveled portion of the highway. In this case, portions of the tractor-trailer were within ten inches of the eastbound lanes of I-80. As in Cabral , the parked vehicle was "massive." Appellant's expert estimated the weight of the tractor-trailer at 60,000 pounds. The danger described in Cabral is reflected in the report of Appellant's expert. He noted that the posted speed limit was 75 m.p.h., and that the damage to the decedent's vehicle was "consistent with an impact at freeway speeds." The tractor-trailer was stationary and "during the collision [the decedent's vehicle] would have sustained a change in velocity of between 56 and 74 mph." Based upon his review of the accident scene and highway crash statistics, he opined that
[i]t is unknown if the tractor-trailer had not been illegally parked, if [decedent's vehicle] would have continued to travel off of the paved shoulder and onto the grassy shoulder of the highway or if he would have remained on the shoulder and brought his vehicle to a safe stop. Assuming he did run off the road at speeds of 60 to 80 mph, statistics show the [l]ikelihood of him sustaining fatal injuries as a result of running off the road at these speeds is less than 3 percent.
[¶19] There is no meaningful distinction between Wyoming and California precedent relating to the issue of proximate cause. While the issue of proximate cause is sometimes explained in terms of the substantial factor test, intervening cause, remote cause, or "natural and probable consequences," we have repeatedly stated that, "The ultimate test of proximate cause is foreseeability."
*512 Killian v. Caza Drilling, Inc. , 2006 WY 42, ¶ 20, 131 P.3d 975, 985 (Wyo. 2006).
We hold that the ultimate test concerning proximate cause will be whether the vendor could foresee injury to a third person. This question will be one of fact based on the circumstances of each particular case. It is, however, not necessary that a specific injury be foreseen.
" ... It is sufficient if a reasonably prudent person would foresee that injury of the same general type would be likely to happen in the absence of such safeguards. [Citations.]" Connett v. Fremont County School District No. 6, Wyo., 581 P.2d 1097 (1978).
McClellan , 666 P.2d at 414.
[¶20] Mr. Chavez contends that his actions were a remote cause and that the actions of the decedent were an intervening cause that "severed any chain of causation that may have existed." Again, however, resolution of that claim involves the same foreseeability analysis that we have just undertaken.
If an injury might reasonably be anticipated from the original negligent act or omission, notwithstanding the intervention of an independent agency, the act of such independent agency will not constitute a defense, for it will not be regarded as cutting off the line of causation, and the party guilty of the original act or omission will be held responsible.
Lemos v. Madden , 28 Wyo. 1, 200 P. 791, 796 (1921) ; see also Buckley v. Bell , 703 P.2d 1089, 1092 (Wyo. 1985) ("An intervening cause is one that comes into being after a defendant's negligent act has occurred, and if it is not a foreseeable event it will insulate the defendant from liability.") (emphasis added).
[¶21] Mr. Chavez also contends that his actions in parking along the side of the road "furnished only the condition or occasion" for the accident and that his actions must be viewed as a remote cause, not a proximate cause. He relies upon our decisions in Lucero , 288 P.3d 1228 and Kopriva v. Union Pac. R.R. , 592 P.2d 711 (Wyo. 1979) to support his position. His reliance is misplaced. Both cases are factually distinguishable from this case.
[¶22] In Lucero , the defendant left her car unattended with the motor running in the driveway while she briefly returned to her home to retrieve her purse. A third party stole the vehicle and subsequently was involved in a high-speed chase with the police. The chase ended when the car driven by the thief collided with a vehicle driven by one of the plaintiffs. Id. , ¶¶ 3-4, 288 P.3d at 1231. The district court granted summary judgment in favor of the defendant and we affirmed the decision. Although we addressed proximate cause and determined that the defendant's conduct in leaving the keys in the vehicle was not a proximate cause of the injuries, we did so only after determining that the defendant did not owe a duty to the plaintiff. Id. , ¶ 20, 288 P.3d at 1235. We summed up our decision in Lucero as follows:
The appellee's conduct was not proscribed by statute and therefore does not result in the violation of a statutory duty of care. The harm suffered was not a foreseeable consequence of the appellee's conduct, nor was it closely connected to the conduct. The appellee's actions are not deserving of moral blame. Imposing a duty on the appellee under these circumstances would substantially burden her and Wyoming residents in general. We conclude that the appellee did not owe the appellants a common law duty of care to protect them from the harm that occurred in this case, and we therefore affirm the district court's grant of summary judgment.
Id. , ¶ 21, 288 P.3d at 1235-36.
[¶23] In Lucero , we reached the same conclusion as the California Supreme Court did in Richards v. Stanley , another key-in-the-ignition case. In Richards v. Stanley , 43 Cal.2d 60, 62, 271 P.2d 23, 25 (Cal. 1954), the plaintiff was injured after a collision with an automobile owned by the defendants but which had been stolen and was being driven by the thief. The court affirmed dismissal of the suit against the owners of the vehicle. It concluded that the owner's "duty to exercise reasonable care in the management of her automobile did not encompass a duty to protect plaintiff from the negligent driving of a *513 thief." Id. , 43 Cal.2d at 66, 271 P.2d at 27. In Cabral , 122 Cal.Rptr.3d 313, 248 P.3d at 1179, the court had no trouble distinguishing Richards and other similar cases: "key-in-the-ignition cases [do not] stand for the proposition that absent special circumstances a collision between a vehicle parked alongside the freeway and one departing out of control from the freeway is unforeseeable. The Richards line of cases involves significantly different facts." Additionally, in Lucero , ¶ 8, 288 P.3d at 1232, we specifically determined that there was no statutory basis for the imposition of a duty: "This statute [ Wyo. Stat. Ann. § 31-5-509 ] does not ... apply to motor vehicles parked in private driveways."[7] We cannot make the same finding in this case. Here, there is a statutory basis for imposing a duty.
[¶24] Kopriva , 592 P.2d at 713, presents the classic "only the condition or occasion" fact pattern. In Kopriva , Union Pacific damaged a bridge over its railroad track, which caused traffic to be rerouted such that the four-lane interstate highway became a two-lane highway for a short span of roadway. Id. , 592 P.2d at 712. Eight months later, while traffic was still being rerouted due to repairs, a vehicle driven by Clifford Carter left its lane of traffic and collided with the plaintiffs' vehicle, which was traveling in the oncoming lane. Id. The plaintiffs injured in the accident alleged negligence on the part of Union Pacific and that such negligence had created an inherently dangerous situation. Id. The district court granted summary judgment to Union Pacific and we affirmed that decision. We concluded as a matter of law that, even assuming negligence in causing the bridge damage, Union Pacific was not liable because "the negligence of the Union Pacific provided 'only the condition or occasion' for the accident and hence was only the remote cause and not the proximate cause." Id. at 713. The damage to the bridge occurred eight months before the car accident in which the plaintiffs were injured. The bridge damage created only the condition or occasion for rerouting the traffic.
[¶25] In Kopriva , there was no claim that the collision between Mr. Carter's vehicle and plaintiffs' vehicle was a foreseeable consequence of the damage to the bridge. There was no claim or evidence that the actions of Union Pacific increased the risk of harm to Mr. Kopriva. Plaintiffs merely asserted that "but for the injury caused to the bridge by the railroad's negligent act no accident would have happened." Id. , 592 P.2d at 712.
[¶26] Appellees also cite several cases from other jurisdictions purporting to support the proposition that summary judgment on the issue of proximate cause is appropriate in these kinds of cases. Some of those cases are distinguishable. For example, in Kellner v. Budget Car & Truck Rental, Inc. , 359 F.3d 399, 407 (6th Cir. 2004), the district court, applying Tennessee law, concluded that the defendant's act of parking a tractor-trailer in the breakdown lane of an interstate highway was not the proximate cause of a subsequent collision. The Court of Appeals affirmed, noting that Tennessee has adopted a special rule regarding proximate cause in standing vehicle cases:
While the general rule in Tennessee, that the foreseeability of an intervening, superseding act presents a jury question, the Carney [v. Goodman , 38 Tenn.App. 55, 270 S.W.2d 572, 576 (1954) ] court adopted a special rule in standing vehicle cases, which the district court applied in the present case, noting that "[u]nder this rule it is unforeseeable as a matter of law someone would drive into a plainly visible standing vehicle." The Carney opinion noted that "[t]he operator of a vehicle that crashes into a vehicle negligently left standing in an unsuitable stopping place provides the proximate cause of any resulting injuries if she could see the standing vehicle in time to avoid a collision."
Kellner , 359 F.3d at 403-04. No such rule has been adopted in Wyoming. Adoption of such a rule would be akin to adoption of the *514 special duty exception immunizing drivers that was specifically rejected by the California Supreme Court in Cabral , 122 Cal.Rptr.3d 313, 248 P.3d at 1182.[8]
[¶27] Appellees also cite Bogovich v. Nalco Chem. Co. , 213 Ill.App.3d 439, 157 Ill.Dec. 579, 572 N.E.2d 1043 (1991), a case in which the court concluded that the accident at issue was not foreseeable, as a matter of law, under facts that are not readily distinguishable from the present case. In Bogovich , the decedent driver crossed into the median of a city street and struck a semi tractor-trailer that was parked in the median. The court concluded that "in accordance with Illinois case law, decedent's loss of consciousness and subsequent loss of vehicular control operated as an unforeseeable, independent act which relieved defendant of any liability for its alleged negligent conduct, including the alleged statutory violations." Id. , 157 Ill.Dec. 579, 572 N.E.2d at 1046. The court noted that "To hold otherwise would charge motorists with the impossible duty of protecting against the unforeseeable loss of consciousness of fellow motorists." Id.
[¶28] We are not persuaded by the Bogovich analysis. As in Sumner v. Sumner , 664 So.2d 718, 722 (La. App. Ct. 1995), another intermediate appellate decision cited by Appellees, the Bogovich court concluded that no duty should be imposed in these circumstances. The court also concluded that "loss of vehicular control" was unforeseeable under the law in Illinois. Bogovich , 157 Ill.Dec. 579, 572 N.E.2d at 1046. As indicated by the discussion above, we conclude that, under the law in Wyoming, reasonable minds can disagree on this question. Additionally, we would note that the risk of injury which informs the existence of a duty in these cases is not only generated by unconscious drivers, as suggested in Bogovich , but also by those classes of drivers who leave their lane of travel because they are distracted, impaired, experiencing medical emergencies, or for other reasons. In any event, we find the analysis in Cabral to be more comprehensive and more persuasive than the court's reasoning in Bogovich .
[¶29] Finally, we note that Appellees suggest that the act of parking the tractor-trailer within a foot of the traveled portion of the interstate highway cannot be considered a proximate cause of the decedent's death because "another vehicle leaving the lane of traffic is not a likely consequence of parking on the side of [the] road, nor is it a likely response to the stimulation caused by parking on the side of the road." (Emphasis added.) They cite Buckley v. Bell , 703 P.2d at 1092, for the proposition that an injury is "reasonably foreseeable if it is a probable consequence of the defendant's wrongful act or is a normal response to the stimulus of the situation created thereby." Appellees interpret this phrase to mean that, in order for an act or omission to qualify as a proximate cause, the injury must have been the likely result of the act or omission. Under our precedent, however, actors are responsible not only for the likely consequences of their acts or omissions, but also for the consequences that "might reasonably be anticipated" - that is, those consequences that are reasonably foreseeable. See, e.g. , Lemos v. Madden , 200 P. at 796, supra ¶ 20.[9]
[¶30] Two cases referenced by Appellees illustrate the point. In Buckley , the defendant erroneously filled the plaintiff's fuel tank with diesel fuel. The plaintiff then took the tank to a field and filled his gasoline-engine hay baler with the fuel. When the plaintiff discovered that he had diesel fuel in the baler's tank instead of gasoline, he drained the fuel in the dry hayfield. Id. , 703 P.2d at 1090. He refilled the baler with gasoline and, when he attempted to start it, the engine backfired, the grass ignited, and the hay baler was destroyed in the resulting fire. He brought suit against the seller of the fuel *515 seeking to recover the cost of his hay baler and additional damages. The case was tried before a judge sitting without a jury. The judge found in favor of the seller after determining that "Defendants' delivery of the wrong fuel was not a proximate cause of the fire." Id. , 703 P.2d at 1091. Mr. Buckley appealed, seeking reversal of the district court's proximate cause determination. We deferred to the district court as the "finder of fact" and affirmed the decision. In doing so, we again recognized that where there is room for reasonable difference of opinion, the question of foreseeability should be determined by the trier of fact:
If ... the negligent character of the third person's intervening act or the reasonable foreseeability of its being done (see §§ 447 and 448) is a factor in determining whether the intervening act relieves the actor from liability for his antecedent negligence, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury.
Id. , 703 P.2d at 1094 (quoting § 453, Restatement (Second) of Torts, comment b). For purposes of the present discussion, it is necessary to note that, notwithstanding the fact that the fire and resulting destruction of the hay baler were clearly not "likely" consequences of the defendant's act of erroneously filling the plaintiff's tank with diesel fuel, we nonetheless found that reasonable persons could disagree as to whether the defendant's conduct constituted a proximate cause of the damages.
[¶31] In Amos v. Lincoln County Sch. Dist. No. 2 , 2015 WY 115, 359 P.3d 954 (Wyo. 2015), a five-year-old boy was attending a community basketball game at a former school building when an unsecured lunchroom bench fell on him, causing a fatal head injury. The boy's personal representative filed suit against the School District, claiming that the District failed to exercise ordinary care when it turned over possession of the building without taking steps to restrict access to the keys that unlocked the lunchroom benches and tables and without warning of the dangers of mishandling those benches and tables. The district court granted summary judgment in favor of the School District on the issue of proximate cause. We reversed. Id. , ¶ 19, 359 P.3d at 959-60. We held that "reasonable minds could differ on the question of whether the School District breached its duty of care, and the question is one properly submitted to the jury." Id. , ¶ 25, 359 P.3d at 961. Likewise, we determined that reasonable minds could differ in answering the questions of proximate and intervening cause. Id. , ¶ 30, 359 P.3d at 963. We noted, "Because there is much on which reasonable minds might disagree with respect to proximate cause, summary judgment was not properly granted on that basis." Id. , ¶ 31, 359 P.3d at 963. Notably, we gave no indication that the falling lunchroom bench was a "likely" result of the School District's failure to warn of the dangers, or that the School District's conduct presented risk of a "probable" injury. Appellees' framing of the issue of proximate cause in terms of the likely consequences of Mr. Chavez's conduct is not supported by our precedent.
[¶32] In sum, we find Appellant was not required to establish that the conduct of Mr. Chavez caused the decedent to leave his lane of travel. Rather, Appellant was required to show that the act of parking on the shoulder of an interstate highway created a reasonably foreseeable increased risk of injury to the decedent. Applying all inferences from the evidence in favor of Appellant, we conclude reasonable minds can differ on this question. Accordingly, the proximate cause issue should be resolved by the jury. We reverse the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.
HILL, Justice, dissenting, in which KAUTZ, Justice, joins.
[¶33] The majority opinion reduces proximate cause to a single generalized inquiry of foreseeability. While I agree that foreseeability is fairly stated as "the ultimate test" for proximate cause, I believe the majority opinion errs in treating the question of foreseeability as a generic inquiry separate from the parameters our law places on proximate *516 cause. I therefore respectfully, but vigorously, dissent.
A. Proximate Cause and Foreseeability under Wyoming Law
[¶34] Wyoming law has long recognized the need for limits on the liability that may flow from a party's wrongful act, and under our negligence law, proximate cause acts as one such limitation.
We agree that but for the act of the defendant the accident might not have occurred, but this fact does not determine the question of liability. The law does not charge a person with all the consequences of a wrongful act but ignores remote causes and looks only to the proximate cause.
Kopriva v. Union Pac. R.R. Co. , 592 P.2d 711, 712-13 (Wyo. 1979).
[¶35] The proximate cause limitation does not exist only at common law. The Wyoming legislature specifically incorporated a proximate cause requirement into our statutory comparative negligence analysis. In particular, Wyoming's comparative negligence law apportions liability according to proportion of total fault, Wyo. Stat. Ann. § 1-1-109(e), and then defines fault to mean "acts or omissions, determined to be a proximate cause of death or injury to person or property." Wyo. Stat. Ann. § 1-1-109(a)(iv) (LexisNexis 2017). Since we presume that the legislature acts with full knowledge of existing law and with an intent that its enactments be read in harmony with existing law, we must assume the legislature intended our existing proximate cause requirements to be a part of any fault apportionment under Wyoming's comparative negligence statute. See Vaughn v. State , 2017 WY 29, ¶ 10, 391 P.3d 1086, 1091 (Wyo. 2017) (quoting Cheyenne Newspapers, Inc. v. City of Cheyenne , 2016 WY 125, ¶ 11, 386 P.3d 329, 333 (Wyo. 2016) ). As one commentator observed:
Because "proximate cause" has historically served as the necessary link between a defendant's conduct and liability, and a limitation on a defendant's liability, perhaps the best interpretation of "proximate cause" in Wyoming's comparative fault statute is that the phrase is intended to be a limitation.
John M. Burman, Wyoming's New Comparative Fault Statute , 31 Land & Water L. Rev. 509, 517-18 (1996).
[¶36] Turning then to that limitation as defined by Wyoming law, it is clear from our most recent cases that our proximate cause analysis demands more than an isolated and generalized inquiry into foreseeability.
In order for proximate cause to exist, "the accident or injury must be the natural and probable consequence of the act of negligence." Foote v. Simek , 2006 WY 96, ¶ 22, 139 P.3d 455, 463 (Wyo. 2006). In fact, "[t]he ultimate test of proximate cause is foreseeability of injury. In order to qualify as a legal cause, the conduct must be a substantial factor in bringing about the plaintiff's injuries." Foote , ¶ 22, 139 P.3d at 464. In our consideration of cases involving proximate cause, we have discussed not only what constitutes proximate cause, but also what does not:
In Lemos v. Madden , 28 Wyo. 1, 200 P. 791, 793 (1921), this court first defined proximate cause as "[t]hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." This same definition has been relied upon in recent years. Robertson v. TWP, Inc. , 656 P.2d 547 (Wyo. 1983) ; Kopriva v. Union Pacific R. Co. , 592 P.2d 711 (Wyo. 1979). In Lemos v. Madden , supra , 200 P. at 794, the court also rejected a "but for" rule of causation, stating:
"* * * But if the original wrong furnished only the condition or occasion, then it is the remote and not the proximate cause, notwithstanding the fact that there would have been no loss or injury but for such condition or occasion. * * *"
In later cases our court has identified legal causation as that conduct which is a substantial factor in bringing about the injuries identified in the complaint. McClellan v. Tottenhoff , Wyo. 666 P.2d 408 (Wyo. 1983) ; Chrysler Corporation v. Todorovich , 580 P.2d 1123 (Wyo. 1978) ;
*517 Phelps v.Woodward Construction Co. , 66 Wyo. 33, 33, 204 P.2d 179 (Wyo. 1949). The obvious rationalization of that approach with the two propositions found in Lemos v. Madden , supra , is that if the conduct is "that cause which in natural and continuous sequence, unbroken by a sufficient intervening cause produces the injury, without which the result would not have occurred," it must be identified as a substantial factor in bringing about the harm. If, however, it created only a condition or occasion for the harm to occur then it would be regarded as a remote, not a proximate, cause, and would not be a substantial factor in bringing about the harm. An alternative method for explaining these concepts is found in the discussions of intervening cause in our cases. McClellan v. Tottenhoff , supra ; Kopriva v. Union Pacific R. Co. , supra ; Gilliland v. Rhoads , 539 P.2d 1221 (Wyo. 1975) ; Fagan v. Summers , 498 P.2d 1227 (Wyo. 1972) ; and Tyler v. Jensen , 75 Wyo. 249, 295 P.2d 742 (Wyo. 1956). An intervening cause is one that comes into being after a defendant's negligent act has occurred, and if it is not a foreseeable event it will insulate the defendant from liability. It is reasonably foreseeable if it is a probable consequence of the defendant's wrongful act or is a normal response to the stimulus of the situation created thereby. Killian v. Caza Drilling, Inc. , 2006 WY 42, ¶ 20, 131 P.3d 975, 985 (Wyo. 2006).
Amos v. Lincoln Cty. Sch. Dist. No. 2 , 2015 WY 115, ¶ 27, 359 P.3d 954, 961-62 (Wyo. 2015) (emphasis in original) (quoting Lucero v. Holbrook , 2012 WY 152, ¶ 17, 288 P.3d 1228, 1234-35 (Wyo. 2012) ).
[¶37] This defining statement of proximate cause confirms the importance of foreseeability in any proximate cause analysis, but it also places its determination in context. Proximate cause does not exist unless an injury is the "natural and probable consequence of the act of negligence," so to be foreseeable, an injury must be a natural and probable consequence of the negligent act. Amos , ¶ 27, 359 P.3d at 961 (quoting Lucero , ¶ 17, 288 P.3d at 1235 ). Proximate cause also requires that the negligent act be that cause "which, in a natural and continuous sequence , unbroken by an efficient intervening cause produces the injury, and without which the result would not have occurred." Amos , ¶ 27, 359 P.3d at 961-62 (emphasis added). An injury must also then, to be foreseeable, arise in a natural and continuous sequence flowing from the original wrong. If an injury does not flow in a natural and continuous sequence from the original wrong, but was instead caused by an intervening cause, it may still be a foreseeable injury proximately caused by the original wrong, but only if the injury was "a probable consequence of the defendant's wrongful act" or "a normal response to the stimulus of the situation created thereby." Id ., ¶ 27, 359 P.3d at 962.
[¶38] Applied to this case, our analysis should be twofold: 1) whether Decedent's collision with the CRST vehicle was a natural and probable consequence of Mr. Chavez's illegal parking and occurred in a natural and continuous sequence to that parking; and 2) whether Decedent's collision was a foreseeable intervening cause of the accident and his injuries.
[¶39] In answer to the first question, Mr. Chavez's illegal parking obviously did not cause Decedent to leave his lane of travel, drive at highway speeds in the emergency lane, and collide with the CRST truck. There is simply no causal link between Mr. Chavez's actions and Decedent's actions. The majority opinion does not dispute this lack of a causal connection and instead attempts to change the question. Rather than looking to whether Mr. Chavez's illegal parking caused the accident, the majority shifts the focus to whether the truck's being in the emergency lane was a substantial factor in bringing about Decedent's injuries . This reframing of the question does not work. Just as Mr. Chavez's illegal parking did not cause the collision, it likewise did not in and of itself, in a natural and continuous sequence, cause Decedent's injuries. The collision caused Decedent's injuries.
[¶40] Whether we direct our focus to the collision or Decedent's injuries, it is clear to me that there exists an intervening act that breaks any purported chain of causation flowing from Mr. Chavez's illegal parking.
*518 Between Mr. Chavez's illegal parking and the collision, the intervening act was Decedent driving in the emergency lane. Between Mr. Chavez's illegal parking and Decedent's injuries, the intervening act was Decedent's collision with the rear of the truck. In my view then we have a single irrefutable fact: Decedent's act of driving in the emergency lane was the intervening cause of both his collision and his injuries.
[¶41] This inescapable conclusion does not end the inquiry, but it does narrow the question. I believe the question we should be answering is whether Decedent's intervening act was foreseeable, which under Wyoming law requires that it be "a probable consequence of the defendant's wrongful act" or "a normal response to the stimulus of the situation created thereby." Amos , ¶ 27, 359 P.3d at 962 (quoting Lucero , ¶ 17, 288 P.3d at 1235 ). The majority opinion does not answer this question and instead departs from these strictures and adopts the California Supreme Court's analysis in Cabral v. Ralphs Grocery Co. , 51 Cal.4th 764, 122 Cal.Rptr.3d 313, 248 P.3d 1170, 1184 (2011). As a predicate to taking this turn, the majority offers that "[t]here is no meaningful distinction between Wyoming and California precedent relating to the issue of proximate cause." See ¶ 19. I strongly disagree.
B. Differences between Wyoming and California Law
[¶42] The majority opinion acknowledges that Wyoming and California differ in that Wyoming follows a modified comparative negligence model and California follows a pure comparative negligence model. I believe the majority fails, however, to recognize the fundamental differences this reflects in our respective laws, both from an overall policy perspective and in the diminished role that is given to the doctrines of intervening cause and remote cause. I believe these differences make Wyoming and California law largely incompatible on the question of proximate cause and lead me to reject the California court's reasoning in Cabral .
[¶43] As to the difference in policy between pure and modified comparative negligence, it has been observed:
Most scholarly commentators then and now lauded "pure" comparative responsibility, under which the plaintiff may recover from a negligent defendant regardless of the extent of plaintiff's own negligence, as the most logical and just approach to the problem-indeed, as the final evolutionary stage of the question of allocation of responsibility in personal injury tort suits. Under such a scheme, in theory at least, a defendant who is but one percent responsible still pays one percent of the plaintiff's damages, since liability is determined by degree of responsibility, whatever that degree is found to be. Despite the popularity of this idea among legal theorists, the wave of adoptions of pure comparative systems between 1973 and 1984-during which time a dozen states adopted such a system-proved short-lived, and no state has adopted a pure form since 1984. Further, three states that had adopted a pure form have replaced it with a modified form in whole or part. As of now, roughly two-thirds of the states adhere to a modified comparative scheme.
There are, of course, a number of reasons why pure comparative responsibility has never swept the nation. As one commentator summarized the critics' views, the pure system is
simply too extreme. ... Although the contributory negligence rule created inequity by placing too stringent a line on plaintiff's fault, pure comparative negligence posits no line at all. By removing all barriers to the highly culpable individual, the pure system erodes both the moral foundation of the fault system and the notion of self-responsibility which, many believe, still needs nurturing in modern tort law.
West Virginia's high court, rejecting a plaintiff's argument that it should adopt a pure system of comparison, found it "difficult, on theoretical grounds alone, to rationalize a system which permits a party who is 95 percent at fault to have his day in court as a plaintiff because he is 5 percent fault-free."
Paul T. Hayden, *519 Butterfield Rides Again: Plaintiff's Negligence as Superseding or Sole Proximate Cause in Systems of Pure Comparative Responsibility , 33 Loy. L.A. L. Rev. 887, 891-93 (April 2000) (footnotes and citations omitted).
[¶44] As to the roles of remote and intervening causes, a number of authorities have observed the tension between comparative negligence and the concepts of remote and intervening cause.
Furthermore, the attorney is advised to bear in mind that while the adoption of comparative negligence should not in theory have any effect on the rules of proximate causation, there may as a practical matter be some effect, for where fault can be apportioned, the courts may not be as quick to find a remote, intervening, or superseding cause of the plaintiff's injury.
Thomas R. Trenkner, Annotation, Modern Development of Comparative Negligence Doctrine Having Applicability to Negligence Actions Generally , 78 A.L.R.3d 339, § 2(c) (1977); see also 3 Stuart M. Speiser et al., American Law of Torts § 13:23 (March 2018 update) ("In spite of these theoretical considerations, the adoption of comparative fault has, as a practical matter, some effect. Where fault can be apportioned, it seems logical that courts will not be quick to find a remote, intervening, or superseding cause of the plaintiff's damages.").
[¶45] It logically follows that a pure comparative negligence jurisdiction will be particularly reluctant to withhold a case from a jury on the basis of an intervening or remote cause. See, e.g. , Torres v. El Paso Elec. Co. , 127 N.M. 729, 987 P.2d 386, 392-93 (1999) ("We believe that an expansive application of the doctrine of independent intervening cause to negligent acts is inconsistent with New Mexico's system of pure comparative fault."), overruled on other grounds by Herrera v. Quality Pontiac , 134 N.M. 43, 73 P.3d 181 (2003). Indeed, California's approach to the doctrine of intervening cause and foreseeability reflects just that type of reticence. While Wyoming law defines a foreseeable intervening act as one that is "a probable consequence of the defendant's wrongful act" or "a normal response to the stimulus of the situation created thereby," California rejects such a restrictive view of foreseeability and intervening cause. Cole v. Town Los Gatos , 205 Cal.App.4th 749, 140 Cal.Rptr.3d 722, 740 (2012) (review denied) (rejecting the need for a direct relationship between the original wrong and the intervening act). It instead takes an expansive view of foreseeability when considering an intervening cause.
Even when a third party's intervening act is unforeseeable, the defendant's conduct may continue to be [sic ] operate as a legal cause if the defendant could reasonably foresee the injury resulting from his own conduct. " '[W]here [an] injury was brought about by a later cause of independent origin ... [the question of proximate cause] revolves around a determination of whether the later cause of independent origin, commonly referred to as an intervening cause, was foreseeable by the defendant or, if not foreseeable, whether it caused the injury of a type which was foreseeable. If either of these questions is answered in the affirmative, then the defendant is not relieved from liability towards the plaintiff; if however, it is determined that the intervening cause was not foreseeable and that the results which it caused were not foreseeable, then the intervening cause becomes a supervening cause and the defendant is relieved from liability for the plaintiff's injuries.' "
Cole , 140 Cal.Rptr.3d at 740 (quoting Pappert v. San Diego Gas & Electric Co. , 137 Cal.App.3d 205, 186 Cal.Rptr. 847 (1982) ).
[¶46] In addition to differences in our respective views on the foreseeability of intervening causes, Wyoming and California also differ on the question of whether a plaintiff's own negligence can bar the plaintiff's recovery. Under Wyoming law, a plaintiff's negligence can be an unforeseeable intervening cause that operates to preclude recovery. See Foote v. Simek , 2006 WY 96, ¶ 23, 139 P.3d 455, 464 (Wyo. 2006) (remanding for trial on question of whether employee plaintiff's negligence was an unforeseeable intervening cause that would bar recovery); Buckley v. Bell , 703 P.2d 1089, 1092 (Wyo. 1985) (upholding trial court finding that plaintiff's negligence was an unforeseeable intervening cause that barred recovery). California, on the other hand, rejects a plaintiff's own negligence *520 as a superseding cause.[10] Cabral , 122 Cal.Rptr.3d 313, 248 P.3d at 1181 ; Hayden, supra , at 904-05. The Cabral court explained:
Cabral's own negligence was, of course, also found to be a cause of the accident, for which the jury assigned him 90 percent of the comparative fault. Ralphs, however, disavows any argument that Cabral's negligent driving was a superseding cause cutting off the company's own liability, an argument that, in any event, would appear precluded by our reasoning and conclusion in Lugtu v. California Highway Patrol, supra, 26 Cal.4th at pages 725-726, 110 Cal.Rptr.2d 528, 28 P.3d 249. We held there that the negligence of a driver whose vehicle veered into the median and hit a vehicle negligently pulled over there by the highway patrol was not a superseding cause of the stopped driver's and passengers' injuries: "The risk of harm posed by the negligence of an oncoming driver is one of the foremost risks against which [the highway patrol officer's] duty of care was intended to protect." ( Ibid . ) Any comparison of the two negligent acts, the officer's and the vehicle driver's, was to be done by the jury in apportioning fault, not by the court as a matter of law . ( Id . at p. 726, 110 Cal.Rptr.2d 528, 28 P.3d 249.). * * *
Cabral , 122 Cal.Rptr.3d 313,248 P.3d at 1181 (emphasis added).[11]
[¶47] Against the backdrop of California's pure comparative negligence law, its expansive view of foreseeability, and its rejection of a plaintiff's own negligence as a superseding cause that bars rather than just reduces recovery, the California Supreme Court's decision in Cabral is unsurprising. Wyoming law commands a different result.
C. Application of Wyoming Law
[¶48] The facts in this case, as they pertain to the collision, are undisputed. At the time of the accident, the CRST vehicle was parked entirely within the emergency lane, with its tractor and trailer hazard lights flashing, and had been parked for about two minutes. The accident occurred entirely within the right shoulder of the highway, with Decedent colliding with the CRST vehicle at a near zero-degree angle.[12] Plaintiff's expert reconstructed the accident as follows:
An analysis of the damage sustained by the Mazda during the impact shows that the forward plane of the Mazda struck the rear of the semi-trailer with the Mazda offset approximately one foot to the left of the trailer. During the collision the Mazda travelled far enough under the trailer that the front of the Mazda contacted the trailer axles, breaking them from their mountings and driving them forwards. The Mazda also traveled far enough under the trailer that the passenger side A and B pillars were sheered through and the C pillar was pushed rearward into the D pillar above the rear axle. The damage suggests the Mazda impacted the tractor-trailer at an angle relatively close to 0°>; however, due to the slight offset, the Mazda rotated clockwise as its center of gravity attempted to move around the obstacle created by the semi-trailer.
*521 An inspection of the crash site was performed on May 30, 2014. During this inspection a gouge mark was found on the right shoulder and was measured to be 2.0 feet from the center of the white road edge line. A fluid stain was found at the same location which was on the shoulder and 1.4 feet from the white edge line. This evidence supports the opinion that the collision occurred within the right shoulder of the highway.
[¶49] Plaintiff's expert opined that Decedent was traveling at highway speeds of between 56 and 74 mph when his vehicle collided with the CRST vehicle. He further opined:
The police report states the collision occurred at 6:45 am at dawn and data from the U.S. Naval Observatory indicates that on the day of the crash sunrise occurred at 7:10 am which was preceded by the start of civil twilight at 6:41 am. Civil twilight indicates the time at which terrestrial objects can be easily distinguished without the aid of artificial lighting. Due to the lighting conditions and flatness of the roadway approaching the parked tractor-trailer, [decedent] should have been able to see the tractor-trailer parked on the side of the roadway. Although he was traveling due east, the sun would have still been below the horizon and would not have caused problems with visibility.
[¶50] Under these circumstances, reasonable minds cannot differ on the question of proximate cause. Decedent's driving at highway speeds in the emergency lane was not foreseeable as a natural and probable consequence of Mr. Chavez's illegal parking, and Mr. Chavez's conduct thus did not put into motion a "natural and continuous sequence" of events that led to Decedent's accident and injuries. See Amos , ¶ 27, 359 P.3d at 962 (quoting Lucero , ¶ 17, 288 P.3d at 1235 ).
[¶51] Nor was Decedent's conduct a foreseeable intervening cause as defined by Wyoming law. See Amos , ¶ 27, 359 P.3d at 962 (quoting Lucero , ¶ 17, 288 P.3d at 1235 ) (an intervening cause "is reasonably foreseeable if it is a probable consequence of the defendant's wrongful act or is a normal response to the stimulus of the situation created thereby"). Decedent's vehicle was entirely within the emergency lane when he reached and collided with the fully visible CRST vehicle, and his conduct was entirely independent of Mr. Chavez's illegal parking. I can see no way in which Decedent's act of driving his vehicle in the emergency lane and colliding with the CRST vehicle was either "a probable consequence" of the illegal parking or "a normal response to the stimulus of the situation created thereby."
[¶52] Other jurisdictions with negligence laws akin to ours have reached the same conclusion under like circumstances. For example, in Bogovich v. Nalco Chem. Co. , 213 Ill.App.3d 439, 157 Ill.Dec. 579, 572 N.E.2d 1043, 1045-46 (1991), an Illinois appellate court upheld a lower court's entry of summary judgment in favor of a defendant "on the ground that the vehicular collision between decedent's vehicle and defendant's parked truck was not proximately caused by defendant's alleged negligence." Bogovich , 157 Ill.Dec. 579, 572 N.E.2d at 1043. The defendant's truck was parked in a median, allegedly illegally, in a manner that the court described as "highly visible," with "its warning lights activated." Id ., 157 Ill.Dec. 579, 572 N.E.2d at 1044-45. At that same time, the plaintiff's decedent was driving on the street parallel to the median, lost consciousness, struck the defendant's vehicle, and suffered fatal injuries. Id. In holding that the decedent's conduct operated as an intervening cause of the accident, the court reasoned:
[D]ecedent's loss of consciousness and subsequent loss of vehicular control operated as an unforeseeable, independent act which relieved defendant of any liability for its alleged negligent conduct, including the alleged statutory violations.
Id. , 157 Ill.Dec. 579, 572 N.E.2d at 1046.
[¶53] In another similar Illinois case, an appellate court upheld a directed verdict for a defendant on the question of proximate cause. Jeanguenat v. Zibert , 78 Ill.App.3d 948, 34 Ill.Dec. 278, 397 N.E.2d 1235, 1238-39 (1979). In Jeanguenat , the following occurred:
During the early morning hours of August 4, 1974, plaintiff was riding as a passenger in an auto driven by defendant Mills along *522 U.S. Route 6 in the city of Peru. Just east of the intersection of U.S. Route 6 and U.S. Route 51 the Mills auto collided with a car owned and operated by defendant Zibert. The Zibert auto was parked parallel to the traffic flow and adjacent to the south curb of U.S. Route 6. This area of U.S. Route 6 in the city of Peru was then designated a no parking zone. The parked auto was blocking or blocking in part the traveled lane of U.S. Route 6.
Important to the resolution of this matter both here and at the court below were the conditions surrounding the collision as admitted by the defendant Mills. At the point of the collision the eastbound traveled portion of U.S. Route 6 was "wide", measuring approximately 20 feet or two and one-half almost three- car widths across. Visibility was good and unobstructed. U.S. Route 6 was straight and level for some distance from the point of impact. Defendant Mills was "feeling the effects" from something in excess of 10 to 15 beers. At the time of the impact with the parked car defendant Mills was turned toward the plaintiff in the front seat, facing him and talking with him. There were no skid marks at the scene indicating an attempt to stop. Indeed, the defendant Mills admits that if his attention had been on the road the collision could have been avoided.
Jeanguenat , 34 Ill.Dec. 278, 397 N.E.2d at 1237.
[¶54] The Illinois court upheld the directed verdict for the defendant Zibert based on its finding that the conduct of the defendant Mills was an unforeseeable intervening cause of the collision and the plaintiff's injuries. Id. , 34 Ill.Dec. 278, 397 N.E.2d at 1239. The court reasoned:
"The law will not tolerate the absurdity of permitting one to testify that he looked and did not see the danger when the view was unobstructed and where, if he had properly exercised his sight, he would have seen it." ( Dee v. City of Peru (1931), 343 Ill. 36, 174 N.E. 901, 904.) * * * [T]otal and unexplained inattention to the roadway while driving an automobile is conduct so outrageously negligent and reckless that in the exercise of reasonable diligence it could not be anticipated . Such is the conduct in the case at bar.
Jeanguenat , 34 Ill.Dec. 278, 397 N.E.2d at 1239 (emphasis added).
[¶55] In Collar v. Meyer , 251 Wis. 292, 29 N.W.2d 31, 32 (1947), the Wisconsin Supreme Court reversed a trial court ruling that a defendant's illegal parking of his truck was the proximate cause of the plaintiff's accident and injuries. The court explained:
The judgment must be reversed. The trial court evidently concluded that the driver might have stopped the truck elsewhere, where it could have been entirely off the roadway, and therefore held as a matter of law that the driver was negligent in parking contrary to sec. 85.19(1). Even if the parking of the truck was negligent as a matter of law, it did not cause this accident. That the driver of the car in which respondent was a guest was startled by the sudden coming of the following westbound car is beyond question. Had he held his course and refrained from turning toward the parked truck, no collision would have taken place. The evidence shows that ample room existed for both cars to pass the truck. Twenty-two feet of highway, seven feet more than that required by sec. 85.19(1) when parking on the roadway is allowed, was left open for the passage of other vehicles south of the parked truck. As suggested by appellant, "The situation presented by the parked truck was one to which the plaintiff's host had completely and safely adjusted himself."
The driver's sudden loss of control of his car was due to a cause disassociated from and in no way connected with the position of the standing truck or its lack of motion. If the truck had been moving at the time of the accident, if the driver, intending to park on the shoulder, for instance, had been in the act of steering the truck off the roadway, there would be no negligence on his part; then it would be clear that the position of the truck would not be the cause of an accident occurring as this one did. One westbound car, passing the truck, suddenly turned to the right when passed by another westbound car at a point where there was 22 feet of roadway open and *523 available and clear of the truck. The accident here was caused by the host's failure to exercise ordinary care under the circumstances and not by the condition then existing with relation to the truck. The parking or stopping of the truck had, therefore, no causal relation to this accident.
Id. at 32.
[¶56] The reasoning in one final case bears discussion. In Beesley v. United States , 364 F.2d 194, 196-97 (10th Cir. 1966), the Tenth Circuit Court of Appeals applied Oklahoma law to similarly conclude that no causal connection existed between the defendants' negligent presence in the lane of travel and an ensuing accident. The court was presented with these facts:
The record shows that a Government vehicle, in use by two Department of Agriculture employees within the scope of their employment, being driven by appellee Sites, ran out of gas and stalled on the 'up' side of a two-lane traffic overpass in Oklahoma City, Oklahoma, during the daylight hours. The Government employees sat in the stalled vehicle and attempted to coast back down the overpass. They signalled oncoming traffic from inside the car. Appellants approached from the rear and stopped approximately twenty-five feet behind the stalled Government vehicle. Shortly thereafter appellee Barnes approached in his truck from the same direction and struck appellants' car in the rear, knocking it forward approximately eight to twelve feet but not into the Government vehicle. Appellant, Mary Beesley, suffered whiplash neck injuries and the rear end of their car was damaged.
Id. at 195.
[¶57] The Tenth Circuit upheld the trial court's finding that the negligence of the government employees was not the proximate cause of the accident and the plaintiff's injuries.[13] In so ruling, the court applied Oklahoma law and explained:
The proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury. Porter v. Norton-Stuart Pontiac-Cadillac of Enid , 405 P.2d 109 (1965). Where the negligence complained of only creates a condition which thereafter reacts with a subsequent, independent, unforeseeable, distinct agency and produces an injury, the original negligence is the remote rather than the proximate cause thereof. This is held to be true though injury would not have occurred except for the original act. Transport Indemnity Co. v. Page , 406 P.2d 980 (1965) ; Norman v. Scrivner-Stevens Co. , 201 Okl. 218, 204 P.2d 277 (1949) ; City of Okmulgee v. Hemphill , 183 Okl. 450, 83 P.2d 189 (1938). Thus the proximate cause of an event must be that which in the natural and continuous sequence, unbroken by any independent cause, produces that event and without which that event would not have occurred. Porter v. Norton-Stuart Pontiac-Cadillac of Enid , supra ; Mathers v. Younger , 177 Okl. 294, 58 P.2d 857 (1936).
We do not agree with the appellants' argument that the Government's negligence was the proximate, or even concurring, cause of their injuries. In light of the foregoing Oklahoma law, we think the trial court properly concluded that the negligence of appellee Barnes was an independent intervening cause.
* * *
[I]t must be borne in mind that when we say 'but for' some instrumentality, the plaintiff would not have been injured, it does not follow that the instrumentality caused the injury or even helped cause it. In order to say that proximate cause exists, there must be some actual causal connection between the negligence and the injury.
Beesley , 364 F.2d at 196-97.
[¶58] I do not cite each of the foregoing decisions for the proposition that they illustrate the absence of a jury question on proximate cause. Some do, some do not. I cite them instead as examples of a proximate *524 cause analysis that is more akin to the rigors of Wyoming's law on proximate cause and foreseeability. These decisions reflect a foreseeability analysis with confines similar to Wyoming law and absent from the analysis in California's decision in Cabral .
[¶59] Returning to the facts presently before the Court, I do not disagree with the majority that there can be more than one proximate cause of an accident and injury, or that there can be concurring proximate causes. Under Wyoming law, however, Mr. Chavez's illegal parking of the CRST vehicle was neither the proximate cause nor a concurring proximate cause of Decedent's accident and injuries. Decedent's unexplained failure to maintain his lane of traffic, and his failure to see what could plainly be seen, was not a probable consequence of Mr. Chavez's actions or a normal response to those actions. Decedent's actions were an independent act of negligence and an unforeseeable intervening cause of the accident and his injuries. See Wyo. Stat. Ann. § 31-5-209(a)(i) (LexisNexis 2017) (requiring driver to maintain a single lane of travel and not change lanes before ascertaining movement may be safely made); Campbell v. W.S. Hatch Co. , 622 P.2d 944, 947-48 (Wyo. 1981) (citing driver's negligence in leaving lane of travel without due care); Chapman v. Ewing , 46 Wyo. 130, 24 P.2d 687, 688 (1933) (quoting Autio v. Miller , 92 Mont. 150, 11 P.2d 1039, 1043 (1932) ) (driver's "duty to keep a lookout includes the duty to see that which is in plain sight").[14]
D. Summary Judgment versus Jury Question
[¶60] While proximate cause is usually a question of fact for the fact finder, it is a question of law for a court if reasonable minds cannot differ on the conclusion to be drawn from the evidence. Amos , ¶ 29, 359 P.3d at 963. For this reason, this Court has on a number of occasions upheld court determinations of proximate cause as a matter of law. See, e.g. , Collings v. Lords , 2009 WY 135, ¶ 7, 218 P.3d 654, 657 (Wyo. 2009) ; Estate of Coleman v. Casper Concrete Co. , 939 P.2d 233, 237 (Wyo. 1997) ; Natural Gas Processing Co. v. Hull , 886 P.2d 1181, 1186-87 (Wyo. 1994) ; Lynch v. Norton Constr., Inc. , 861 P.2d 1095, 1099 (Wyo. 1993) ; Kopriva , 592 P.2d at 713 ; O'Mally v. Eagan , 43 Wyo. 233, 2 P.2d 1063, 1066 (1931). We have explained:
Conceding, as mentioned, the defendant's negligence as above stated, it must be determined as to whether or not it was the proximate cause of the injury, or one of the proximate causes thereof. Ordinarily that question is for the jury. Hines v. Sweeney , 28 Wyo. 57, 201 P. 165, 1018 ; 45 C. J. 1168. That is true where different inferences may fairly be drawn even though the evidence is undisputed. But it is a question for the court where but one *525 inference and conclusion can be drawn from the evidence; and whether only one inference may be drawn must necessarily ultimately rest with the court, for otherwise the jury would at all times have the right to arbitrarily determine the point.
O'Mally , 2 P.2d at 1066.
[¶61] The undisputed facts show that Decedent's conduct was an unforeseeable intervening cause that was independent of and unconnected to Mr. Chavez's illegal parking of the CRST vehicle, and under such circumstances I can see no basis for reasonable minds to differ on the question of proximate cause. This Court's decisions in Amos and Buckley do not suggest a different result.
[¶62] Amos was a failure to warn case. Amos , ¶¶ 29-31, 359 P.3d at 963. In that case, a school district owned a school building and turned over control of the building to a community group for community activities involving children. Id. , ¶¶ 7-8, 359 P.3d at 956-57. In doing so, the district gave no warnings concerning the handling of dining tables in the school cafeteria/activities room even though the district knew the tables were dangerous if mishandled. Id. , ¶ 25, 359 P.3d at 961. The community group then held an event at which a child died from injuries sustained when a mishandled table fell on him. Id. , ¶ 8, 359 P.3d at 957. We held that questions of fact precluded summary judgment on the question of proximate cause.
The question in this case is whether the mishandling or improper storage of the lunchroom bench was a natural or probable consequence, or a foreseeable consequence, of the School District's failure to instruct or warn the Community Group on the proper handling and storage of the tables and benches or its failure to restrict access to the keys to the tables and benches. In other words, if the gravity of the danger had been addressed with the Community Group, might that have changed the manner in which the tables and benches were handled and who was permitted access to the tables and benches?
Considering these factors, we believe reasonable minds could differ in answering the questions of proximate and intervening cause. Certainly, reasonable minds might differ on the question of whether the placement of the bench in the storage room was an extraordinary act. Reasonable minds might also differ on the question of whether the placement of that bench was an intervening force that acted independently from any conduct on the part of the School District. For example, the record contains evidence that before the accident involving Taylor Lysager, another child was injured when a table or bench fell from the wall and struck the child. Reasonable minds might differ on whether that suggests that the Community Group already had notice of the need to properly secure the tables and benches and that any additional warning by the School District would have been of little or no consequence.
Our intent here is not to outline each conceivable question related to proximate cause on which reasonable minds might differ but instead to illustrate that the question is truly one that belongs to the trier of fact. Because there is much on which reasonable minds might disagree with respect to proximate cause, summary judgment was not properly granted on that basis.
Amos , ¶¶ 29-31, 359 P.3d at 963.
[¶63] In Amos , there was an arguable line of causation between the school district's failure to warn the community group concerning proper handling of the dining tables, the community group's mishandling of the tables, and the subsequent injury to the child. The questions of fact that precluded summary judgment concerned that line of causation and the foreseeability of the community group's mishandling of the tables. In other words, a question of foreseeability existed because the events from negligent act to accident and injury had the causal connection required by our proximate cause precedent. The present case is entirely distinguishable. No causal connection exists between Decedent's conduct and Mr. Chavez's illegal parking of the CRST vehicle, and on this, reasonable minds cannot differ.
[¶64] Buckley likewise presented an arguable line of causation between the defendants' negligence and the plaintiff's injuries. Buckley v. Bell , 703 P.2d 1089 (Wyo. 1985). The *526 defendants mistakenly sold diesel fuel rather than regular gasoline to the plaintiff, who then used that fuel to fill the tank of his hay baler. Id . at 1090. The hay baler then malfunctioned, and in an effort to correct the problem, the plaintiff drained the baler's fuel tank in a hayfield. Id . at 1090-91. When he attempted to restart the engine, it backfired and ignited the grass, and the baler was destroyed in the fire. Id . at 1091. The district court held a bench trial and held that the plaintiff's conduct was an unforeseeable intervening act that insulated the defendants from liability. Id . We upheld the district court decision and observed:
In this instance the finder of fact decided that the delivery of the diesel fuel was not a proximate cause of the fire and that the actions of Buckley were a new and independent force which proximately caused the fire and the resulting damages to the hay baler. The evidence in the record supports this inferential finding by the trial court, and it is not a situation which is so clear that reasonable minds could not disagree.
Id. at 1092.
[¶65] Buckley , like Amos , serves only to highlight what a case looks like when it presents questions on which reasonable minds might differ. In Amos , reasonable minds might differ on the effect the school district's failure to warn would have on the community group's handling of the dining tables. In Buckley , reasonable minds might differ on whether the plaintiff's decision to drain his hay baler's fuel tank and restart the baler where he did were foreseeable actions in response to the defendant's negligent act of delivering the wrong fuel. In this case, there are no such questions on which reasonable minds might differ. Under Wyoming law, there is no line of causation between Mr. Chavez's illegal parking and Decedent's collision and injuries and no foreseeable connection between the illegal parking and Decedent's intervening actions.
[¶66] The result the majority opinion reaches in this case by invoking California law is untenable under Wyoming law and is a significant departure from our precedent. The only justification the majority offers for this break from precedent is a concern that upholding the district court's summary judgment ruling would have the effect of creating a class of negligence, illegal parking, that has immunity from liability. I do not see the district court's ruling as having that effect, and in my view, the result of the majority opinion itself is to create its own special class of negligent acts. Rather than relying on our customary individualized analysis of causation to determine whether a question of fact exists on the facts before us, the majority announces a rule that if a defendant is illegally parked and is struck by another vehicle, no matter how inexplicable the other driver's conduct and no matter how tenuous the connection between the illegal parking and the accident, proximate cause will always be a jury question. I prefer to adhere to our precedent and practice and take each of these cases as they come and on their own individual circumstances. In that regard I agree with the observation by another Illinois appellate court:
Just because a person happens to be in a location where an accident occurs does not make him a proximate cause of the accident. ... We are by no means advocating an absolute rule that a parked vehicle can never be a proximate cause of an accident. There may be instances in which a party who has parked a vehicle could be found negligent for an ensuing accident. However, we do not find this case to be one of those instances.
P.A.M. Transport, Inc. v. Builders Transport, Inc. , 209 Ill.App.3d 889, 154 Ill.Dec. 453, 568 N.E.2d 453, 456 (1991) ; see also Dirickson v. Mings , 910 P.2d 1015, 1017-18 (Okla. 1996) (footnote omitted) (" 'Parked car cases' do not have special rules, but are controlled by the general rules of negligence law.").[15]
*527 [¶67] For all of these reasons, I would reject the alien reasoning from California, vintage 2011, and adhere to our precedent and practice, developed over decades of sound reasoning and analysis, and affirm the decision of the district court granting Defendants summary judgment on the question of proximate cause.

There appears to be a factual dispute as to the angle of impact between the two vehicles. The Investigator's Traffic Crash Report indicates that the front of the Mazda impacted the driver's side rear of the trailer at a forty-five-degree angle. According to the report from the defense expert: "The Mazda had crossed onto the shoulder by over half the vehicle width when the impact occurred." Plaintiff's expert saw it differently: "An analysis of the damage sustained by the Mazda during the impact shows that the forward plane of the Mazda struck the rear of the semi-trailer with the Mazda offset approximately one foot to the left of the trailer. ... The damage suggests the Mazda impacted the tractor-trailer at an angle relatively close to 0°." This factual dispute is not material to the issues presented in this appeal.

There would appear to be no question that the decedent's conduct was a proximate cause of the collision and resulting damages. The question before us, however, is whether the conduct of Mr. Chavez was also a proximate cause of the collision and resulting damages. There may be more than one proximate cause of an accident or injury:
More than one proximate cause can exist for an accident or injury. Each concurrent cause that contributes directly to the accident or injury is a "proximate cause." " '[W]here injury results from two separate and distinct acts of negligence by different persons operating and concurring simultaneously and concurrently, both are the proximate cause and recovery may be had against either or both of the responsible persons.' "
Natural Gas Processing Co. v. Hull , 886 P.2d 1181, 1186 (Wyo. 1994) (quoting Hester v. Coliseum Motor Co. , 41 Wyo. 345, 353, 285 P. 781, 783 (1930) ); see also Wyo. Stat. Ann. § 1-1-109(a)(iv) (" 'Fault' includes acts or omissions, determined to be a proximate cause ...."); Wyo. Stat. Ann § 1-1-109(a)(i) (" 'Actor' means a person or other entity, including the claimant, whose fault is determined to be a proximate cause of the death, injury or damage, whether or not the actor is a party to the litigation."). We note that whether the decedent's conduct was negligent is a different question; the record does not provide an explanation for his actions.

Appellees also contend the decedent's conduct was "an intervening cause that severed any chain of causation that may have existed" and that "the sole cause of this accident is decedent's failure to maintain his lane of travel."

California has adopted "pure" comparative fault. The plaintiff in Cabral was entitled to recover ten percent of the damages awarded. In Wyoming, the plaintiff would not have recovered any damages under our statutory comparative fault scheme because the claimant's fault exceeded "fifty percent (50%) of the total fault of all actors." Wyo. Stat. Ann. § 1-1-109(b).

In Bryant v. Glastetter , 32 Cal. App. 4th 770, 38 Cal.Rptr.2d 291 (1995), the decedent tow truck driver was called by police to remove a car from the side of the freeway after the police arrested the driver of the vehicle, the defendant, for driving under the influence. The tow truck driver was struck and killed by a third party as he attempted to remove the car from the side of the road. The court affirmed the dismissal of the surviving spouse's suit against the intoxicated driver after concluding that he owed no duty to the decedent because "there is no logical cause and effect relationship between that negligence and the harm suffered by decedent." Id. , 32 Cal. App. 4th at 782, 38 Cal.Rptr.2d 291. We discuss Richards v. Stanley , 43 Cal.2d 60, 271 P.2d 23 (1954) below, at ¶ 23.

According to the affidavit of Appellant's expert, there were "multiple no parking signs ... adjacent to the eastbound lanes of I-80" that were leading up to where the tractor-trailer was parked at the time of the collision. Although he classified them as "no parking" signs, it appears that the signs provided for "emergency parking only." The distinction has no impact on our summary judgment analysis. It could be relevant at trial. See Cabral , 122 Cal.Rptr.3d 313, 248 P.3d at 1184, supra ¶ 14.

The statute provided as follows:
§ 31-5-509. Requirements before leaving motor vehicle unattended.
No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key from the ignition, effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway.

See discussion at ¶ 17, supra .

This standard is also embodied in Wyoming Civil Pattern Jury Instruction 3.06, which provides:
The exact or precise injury need not have been foreseeable, but the Defendant may be found to be a "cause" of the Plaintiff's harm within the meaning of these instructions if a reasonably careful person, under similar or the same circumstances as the Defendant, would have anticipated that injury to a person in the Plaintiff's situation might result from the Defendant's conduct.

"Superseding cause" and "unforeseeable intervening cause" mean the same thing. Glenn v. Union Pac. R.R. Co. , 2011 WY 126, ¶ 40, 262 P.3d 177, 195 (Wyo. 2011) ("An unforeseeable intervening cause is also described as a 'superseding cause.' ").

This is not to suggest that California will never keep a case from a jury due to a plaintiff's own negligence. See Elder v. Pacific Tel. & Tel. Co. , 66 Cal.App.3d 650, 136 Cal.Rptr. 203, 205-06 (1977) (upholding nonsuit where plaintiff's negligence was sole proximate cause of injuries). While California will not do so in a comparative negligence setting, it will if a plaintiff is determined to be the sole negligent actor. Hayden, supra , at 904-05.

I disagree that the Wyoming Highway Patrol report creates a genuine issue of material fact with regard to the angle at which Decedent collided with the CRST vehicle. See ¶ 4 n.1. The WHP report contains a diagram that shows the Decedent's vehicle at a 45-degree angle, but Plaintiff's expert explained that this was how Decedent's vehicle came to rest after impact, not the angle at which Decedent struck the CRST vehicle. Plaintiff's expert opined that Decedent's vehicle struck the CRST vehicle at a near zero-degree angle and the impact's rotational force then left Decedent's vehicle at the 45-degree angle. The record contains no evidence to suggest that the expert's conclusion is in dispute.

The trial court dismissed the claim against appellee Barnes for lack of diversity jurisdiction. Beesley , 364 F.2d at 195.

I disagree with the majority's proposition that if foreseeability is established for purposes of establishing duty, it is established for determining proximate cause. In Lucero , we recognized the opposite when we observed that "even if we recognized the existence of a duty, there simply is no proximate cause connection between the acts of the appellee and the harm to the appellants." Lucero , ¶ 17, 288 P.3d at 1234. I particularly reject the proposition in this case where the majority draws its foreseeability finding for purposes of establishing duty entirely from Cabral , where the California court stated:
Before applying the Rowland [v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968) ] considerations to the duty question posed here, we note an important feature of the analysis: the Rowland factors are evaluated at a relatively broad level of factual generality. Thus, as to foreseeability, we have explained that the court's task in determining duty "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed. ... "
Cabral , 122 Cal.Rptr.3d 313, 248 P.3d at 1175.
I can see no basis to extrapolate a specific proximate cause finding from a more generalized consideration of duty. Indeed, I see no basis to be ruling on the question of duty. The question of duty was not raised or briefed on summary judgment or on appeal to this Court, and neither the parties nor the district court have weighed in on the question. Although the existence of a common law duty is a question of law, we have observed that it is a complicated matter involving consideration of a number of factors. Lucero , ¶ 10, 288 P.3d at 1233. There is no need for the Court to rule on the question of duty at this juncture, and I believe the parties should have an opportunity to be heard on the question.

Even if there were a good reason to depart from our precedent, I am not certain that it is within this Court's purview to do so. The legislature explicitly incorporated a proximate cause requirement into our comparative negligence statute, and it seems to me that to ignore Wyoming precedent in favor of California law is to undercut the legislature's intent in incorporating that law into our comparative negligence statute. See Pacificorp, Inc. v. Wyo. Dep't of Revenue , 2017 WY 106, ¶ 10, 401 P.3d 905, 908 (Wyo. 2017) (quoting Fugle v. Sublette County School Dist. No. 9 , 2015 WY 98, ¶ 8, 353 P.3d 732, 734 (Wyo. 2015) ) ("When we interpret statutes, our goal is to give effect to the intent of the legislature[.]").